Velma M. DIEBOLD and FIRST NATIONAL BANK OF
WYNNE, ARKANSAS *v.* MYERS GENERAL
AGENCY, INC.

86-313                                           731 S.W.2d 183

Supreme Court of Arkansas
Opinion delivered June 15, 1987

*Proctor & McCauley*, by: *Richard L. Proctor*, for appellant
Velma M. Diebold.

*Shaver, Shaver & Smith*, by: *Tom B. Smith*, for appellant
First National Bank of Wynne.

*Daggett, Van Dover, Donovan & Cahoon*, by: *Jesse B. Daggett*, for appellee.

DAVID NEWBERN, Justice. A judgment was rendered against appellant Velma Diebold in the amount of $156,905.51 for her failure to pay a promissory note in favor of the appellee, Myers General Agency, Inc. Mrs. Diebold asked the trial court to set the judgment aside pursuant to Ark. R. Civ. P. 60(b) or 60(c). She claimed, and contends on this appeal, that the judgment entered against her was a default judgment and that she had not had the benefit of the three-day notice period prescribed in Ark. R. Civ. P. 55. She also contends that because her attorney was allowed to withdraw from the case in violation of Ark. R. Civ. P. 64, she has been denied a fair trial in violation of her right to due process of law. We hold that the judgment against Mrs. Diebold was not a default judgment, as it was one taken on the basis of evidence presented by the appellee. Mrs. Diebold moved to set the judgment aside pursuant to Ark. R. Civ. P. 60. We hold that she was not entitled to relief under Rule 60(b) because the court did not act within the ninety-day limit prescribed in that rule, and that she was not entitled to relief under Rule 60(c) because she was negligent in failing to check on or show any interest whatever in the suit against her of which she had been given notice. For the same reason, we hold that Mrs. Diebold has not been denied due process of law.

Lloyd Diebold, Jr., Mrs. Diebold's son, was charged with theft resulting, apparently, from his failure to remit insurance premiums which had been paid to him and were owed to the appellee. He owed some $44,000 on his "account" with the appellee, plus other money he had borrowed from the appellee's president. The trial court accepted a plea of guilty and suspended imposition of sentence on Lloyd Diebold, Jr., for a five-year period. One of the conditions of the suspension was restitution to the appellee in a total amount of $162,932.55. Mrs. Diebold signed the note in that amount when she was visited by her son and Johnny Myers, an officer of the appellee corporation. Although Lloyd and Myers did not threaten Mrs. Diebold, Myers explained to her that he did not want to see Lloyd go to prison, and that would be the result if the "restitution" were not achieved.

Mrs. Diebold was not the only maker of the note. She had

cosigned it with Lloyd and a number of other family members. She made one $10,000 payment on the note and thereafter no payments were made. The appellee brought this action on the note, and Mrs. Diebold was served with a summons. She called Lloyd and then did nothing further. Lloyd hired the law firm of Croxton and Boyer, of Rogers, Arkansas, to answer the suit. An answer was filed by Charles F. Hickman, an associate of that law firm. Mr. Hickman took no further action in the suit except to respond to a motion for summary judgment which was filed by the appellee and to respond to telephone calls from counsel for the appellee about the setting of the action for trial. He did not communicate with Mrs. Diebold at all.

On March 14, 1986, the case was set by the trial court to be heard in Cross County on April 1, 1986. Mr. Hickman was notified of the trial date. The appellee and its witnesses and counsel appeared for the trial, but Mr. Hickman did not appear. Rather, he called an attorney in Cross County and prevailed on him to present two motions to the court. The first motion was that the case be continued, and the other was that Mr. Hickman be allowed to withdraw from the case. The continuance motion was denied, and the motion to withdraw was granted. Mrs. Diebold was not present and had no idea the trial was being held. The court took evidence from the appellee's witnesses and entered a judgment in favor of the appellee. Mrs. Diebold first learned that "something was wrong" when her bank account was garnished to satisfy part of the judgment.

## 1. Default judgment

Mrs. Diebold contends that the judgment taken against her was a default judgment governed by Ark. R. Civ. P. 55, and that it was error not to have set it aside because she had appeared in the action through the answer filed by Mr. Hickman but was not given the three-day advance notice required by the rule to be given to a party who has appeared. The problem with this argument is its basic premise. No default judgment was taken in this case. We have not addressed the definition of default judgment as discussed in Rule 55; however, our court of appeals has. In *Dawson v. Picken,* 1 Ark. App. 168, 613 S.W.2d 846 (1981), it was held that where no motion for default was made upon the failure of a party to appear but a judgment was taken on

the basis of the evidence adduced, Rule 55 was inapplicable. That is also the rule in some other jurisdictions. *Coulas* v. *Smith,* 96 Ariz. 325, 395 P.2d 527 (1964); *Davis* v. *Klaes,* 141 Colo. 19, 346 P. 2d 1018 (1959); *Biddy* v. *Preston,* 555 S.W.2d 898 (Tex. Civ. App. 1977).

The only case cited by Mrs. Diebold dealing with Rule 55 is *Magness* v. *Masonite Corporation,* 12 Ark. App. 117, 671 S.W.2d 230 (1984), in which our court of appeals held it was error not to have set aside a default judgment where the defendant had appeared but had not been given the requisite three-day notice. In that case, however, no question was raised as to whether the judgment was taken by default. The judgment was entered against the defendant apparently because he had failed to respond to an amendment to the original complaint. The court of appeals consistently characterized the judgement as a default judgment in its opinion, and there seems to be little doubt that it was not a judgment based upon evidence presented before the court as in this case.

Our holding is that when a judgment is based upon evidence presented to the court at a trial, as opposed to being based on the failure of a party to appear or attend, the judgment is not a default judgment, and Rule 55 does not apply.

### 2. *Ark. R. Civ. P. 60(b)*

Rule 60(b) provides:

> (b) Ninety-Day Limitation. To correct any error or mistake or to prevent the miscarriage of justice, a decree or order of a circuit, chancery or probate court may be modified or set aside on motion of the court or any party, with or without notice to any party, within ninety days of its having been filed with the clerk.

The judgment in favor of the appellee against Mrs. Diebold on the note was filed April 10, 1986. The motion to set the judgment aside pursuant to Rule 60(b) was filed July 8, 1986, which was the eighty-ninth day after the judgment. No action was taken by the court, but a hearing was held September 8, 1986, at which the motion was denied. No explanation of Mrs. Diebold's delay in seeking relief under Rule 60(b) appears in the

record. After the ninety days specified in Rule 60(b) had passed, the court lost the authority to set aside the judgment on the basis that there had been a miscarriage of justice. *See Mullen* v. *Couch,* 288 Ark. 231, 703 S.W.2d 866 (1986), where we said, in the context of ruling on a motion for new trial, that "a court must act within 90 days of the filing of the judgment with the clerk if it is to modify or set aside its judgment . . . unless certain conditions . . . exist." The "certain conditions" referred to are those found in Rule 60(c).

While Mrs. Diebold's original motion to set aside the judgment invoked only the provisions of Rule 60(b), at one point she amended her motion to include reference to all of Rule 60, so we will address whether she was entitled to have the judgment set aside pursuant to subsection (c).

### 3. *Ark. R. Civ. P. 60(c)*

Rule 60(c), in pertinent part, provides:

> (c) Grounds for Setting Aside Judgment After Ninety Days. The court in which a judgment has been rendered or order made shall have the power, after the expiration of ninety (90) days after the filing of said judgment with the clerk of the court, to vacate or modify such judgment or order:
>
> . . .
>
> (7) For unavoidable casualty or misfortune preventing the party from appearing or defending. . . .

Mrs. Diebold contends that there was in this case an unavoidable casualty or misfortune which prevented her from appearing or defending.

While this court has held that a misunderstanding of counsel resulting in the entry of a default judgment may constitute an unavoidable casualty or misfortune sufficient to permit setting aside the judgment pursuant to Rule 60(c)(7), *Foote* v. *Jitney Jungle, Inc.,* 283 Ark. 103, 671 S.W.2d 186 (1984), we have not so held when the party against whom the judgment was rendered ignored the lawsuit altogether. *Meisch* v. *Brady,* 270 Ark. 652, 606 S.W.2d 112 (1980). The words, "unavoidable casualty or misfortune," found in Rule 60(c)(7) were taken from

a statute which was similar to the rule and which has now been superseded. Ark. Stat. Ann. § 29-506. In applying that language we consistently held that a party cannot invoke the aid of the court in setting aside a judgment where she failed to keep herself informed. In *Merchants & Planters Bank & Trust Co.* v. *Ussery,* 183 Ark. 838, 38 S.W.2d 1087 (1931), we held that a woman who received a summons, as did Mrs. Diebold, and then turned the matter over to her son was not entitled to relief from a judgment entered against her without her knowledge. The knowledge of the son was imputed to his mother who had made him her agent, and we said her failure to appear was the result of her failure to keep herself informed. *See also Midwest Timber Products Co.* v. *Self,* 230 Ark. 872, 327 S.W.2d 730 (1959); *Parker* v. *Sims,* 185 Ark. 1111, 51 S.W.2d 517 (1932).

The record shows that Mrs. Diebold made no efforts whatever to keep herself informed. She simply trusted her son to handle the matter. Given his record to that point, we cannot say she was other than negligent. While there was evidence that Mrs. Diebold was taking strong drugs which had been prescribed for her during the time she should have been keeping up with her case, there was also evidence that she was continuing to act as trustee of a trust established in her late husband's estate and handling other business matters. To the extent the trial court's ruling may have considered that she had no excuse for failure to keep herself informed about the proceedings, we can hardly say any such factual determination was clearly erroneous.

### 4. Ark. R. Civ. P. 64

The most troublesome aspect of this case is that the trial court allowed Mr. Hickman to withdraw as counsel for Mrs. Diebold without complying with Rule 64. That rule provides:

### Withdrawal of Counsel

A lawyer may not withdraw from any proceeding or from representation of any party to a proceeding without permission of the court in which the proceeding is pending. Permission to withdraw may be granted for good cause shown if counsel seeking permission presents a motion therefor to the court showing he (1) has taken reasonable steps to avoid foreseeable prejudice to the rights of his

client, including giving due notice to his client, allowing time for employment of other counsel; (2) has delivered or stands ready to tender to the client all papers and property to which the client is entitled; and (3) has refunded any unearned fee or part of a fee paid in advance, or stands ready to tender such a refund upon being permitted to withdraw. . . .

In a deposition Mr. Hickman testified that after he filed the answer he sought on numerous occasions to discuss the case and obtain assistance from Lloyd Diebold who would not even respond to letters in which he was warned of the seriousness of the situation. Mr. Hickman also testified to numerous unsuccessful attempts to telephone Mrs. Diebold and to reach her through other attorneys. Mr. Hickman testified that Lloyd's "disappearance" was making him very nervous, and he discussed his need to withdraw with the judge prior to the trial date.

As the reporter's note to Rule 64 indicates, it has its basis in what is now called the Code of Professional Responsibility. It thus is a rule which deals with attorney discipline. However, the rule is aimed at protecting the client's interest. Permission to withdraw should not have been granted summarily. We cannot say that such a violation will not be a basis for setting aside a judgment pursuant to Rule 60(b) or (c) when the party whose interests have been thus prejudiced has been diligent in protecting those interests. Here, however, Mrs. Diebold's failure to keep tabs on her case was in large measure the reason she did not present the defenses she now claims to the action on the note. Even if the judge had overruled Mr. Hickman's motion to withdraw, Mrs. Diebold would have been no better off, as she was unaware of the proceedings and Mr. Hickman was unavailable.

Had Mrs. Diebold inquired of her attorney or perhaps of her son, she could have avoided the situation that resulted. The violation of Rule 64 would not have occurred had she fulfilled her duty to keep up with the case, thus we find no deprivation of due process.

## 5. Motion for costs

The appellee's counsel has moved to recover costs incurred in supplementing the abstract provided by the appellants. While the

supplemental abstract prepared by the appellee was of some use, we do not find that there was the sort of clear-cut and demonstrable failure by the appellants to abstract so that a full and fair consideration of the matters in issue could be had. *Arkota Industries, Inc.* v. *Naekel,* 274 Ark. 173, 623 S.W.2d 194 (1981).

Affirmed.