## CMS JONESBORO REHABILITATION INC. d/b/a
Northeast Arkansas Rehabilitation Hospital, Inc. *v.* Boyd
and Delores LAMB

91-70                                            812 S.W.2d 472

Supreme Court of Arkansas
Opinion delivered July 1, 1991

*Hillburn, Calhoon, Harper, Pruniski, & Calhoun, Ltd.*, by: *James M. McHaney, Jr.* and *Paula Jamell Stonegard* and *Lyons & Emerson*, by: *Jim Lyons*, for appellant.

*Rees Law Firm*, by: *David Rees*, for appellees.

ROBERT L. BROWN, Justice. This appeal arises from a default judgment entered against the appellant, CMS Jonesboro Rehabilitation, Inc. d/b/a Northeast Arkansas Rehabilitation Hospital, Inc. ("CMS"), and in favor of the appellees, Boyd Lamb and Delores Lamb, in the amount of $23,572.75. CMS advances the arguments that the service was defective and, alternatively, that the failure of CMS to answer was due to excusable neglect and unavoidable casualty or misfortune.

We do not agree, and we affirm the judgment.

The appellees filed their complaint against CMS and its parent company, Continental Medical Systems, Inc. ("Continental"), on July 25, 1989, alleging damages to the appellees' residence caused by a dirt-pounding process associated with the construction of a CMS facility that sent shock waves and vibrations to the appellees' property. The appellees sought to serve CMS by serving its agent, The Corporation Company, with complaint and summons on July 25, 1989, by certified mail,

return receipt requested. The receipt was signed by R.L. Wright on the "Signature-Agent" line on July 28, 1989. Under the category on the receipt entitled "Type of Service," the "Certified" box was marked with an "x." No check or mark of any kind was made in the "Restricted Delivery" box on the receipt. At the time of service a Standing Delivery Order form was on file with the U.S. Postal Service showing that R.L. Wright was an authorized agent of The Corporation Company to receive unrestricted and restricted delivery mail. After receiving the complaint and summons, The Corporation Company forwarded the same to CMS.

Approximately four and one-half months after the certified mail receipt was signed, and specifically on December 11, 1989, the appellees took a default judgment against CMS and Continental in the amount of $23,572.25. CMS and Continental did not discover the default judgment until April 25, 1990, and moved to set it aside on May 3, 1990. The trial court reviewed affidavits submitted by the parties and evidentiary depositions and heard testimony from a witness and arguments of counsel at a hearing on August 15, 1990. By order entered on August 17, 1990, the trial court denied the motion to set aside with regard to CMS but granted it with regard to Continental, due to lack of in personam jurisdiction.

CMS argues, first, that service of process by the appellees did not satisfy the dictates of Ark. Rule Civ. P. 4(d)(8)(A), which authorizes service of summons and complaint by mail:

> Service of a summons and complaint upon a defendant . . . may be made by the plaintiff or an attorney of record for the plaintiff by any form of mail addressed to the person to be served with a return receipt requested and delivery restricted to the addressee or the agent of the addressee. Service pursuant to this paragraph shall not be the basis for the entry of a default or judgment by default unless the record contains a return receipt signed by the addressee or the agent of the addressee or a returned envelope, postal document or affidavit by a postal employee reciting or showing refusal of the process by the addressee.

Ark. R. Civ. P. § 4(d)(8)(A). In the case before us, the mail was appropriately addressed to The Corporation Company, which

was the registered agent of CMS, with a return receipt requested. A receipt signed by R.L. Wright on behalf of The Corporation Company is also in the record. These facts are not in dispute.

CMS's argument, however, centers on whether the mailing by the appellees was a "delivery restricted" to The Corporation Company under Rule 4(d)(8)(A). We hold that it was. It is true that the Restricted Delivery box was not checked on the U.S. Postal Service form. Nevertheless, the procedure followed by the postal service and The Corporation Company was the designated procedure under Rule 4(d)(8)(A) had the box been checked: a person authorized to accept restricted mail did so and signed the required receipt which was returned to the appellees and is now part of the record.

It is undisputed that R.L. Wright was authorized to accept restricted mail on behalf of The Corporation Company. Evidencing this fact was the card on file with the postal authorities at the time which was signed by Wright and which contained the added notation: "This authorization is extended to include Restricted Delivery." Furthermore, Wright signed for and accepted the mail containing the complaint and summons, the same as he would have done had the "Restricted Delivery" box been marked. Under such facts it would strain credulity to hold that the delivery was not, in fact, carried out in restricted fashion and that the purposes and objectives of Rule 4(d)(8)(A) were not, in fact, met.

We particularly note the language in Rule 4(d)(8)(A) which provides when service can be the basis for a default judgment. The rule states that a default judgment shall not be entered "unless the record contains a return receipt signed by the addressee or the agent of the addressee." That is exactly what was done in this case—a return receipt signed by the appropriate person, R.L. Wright, on behalf of The Corporation Company was made part of the record. The object of the rule is to give CMS knowledge of the appellees's suit, and that object has clearly been met. For reasons unrelated to service of process, CMS simply failed to respond to the complaint.

In its argument CMS relies heavily on a prior case of this court handed down in 1989 which had somewhat similar facts. *See Wilburn v. Keenan Companies, Inc.,* 298 Ark. 461, 768

S.W.2d 531 (1989). In *Wilburn* the trial court also refused to set aside a default judgment where service of complaint and summons was by certified mail, return receipt requested, but where the "Restricted Delivery" box was not marked. However, in *Wilburn*, the person who received the certified mail with the complaint and summons was not authorized by the defendant to receive restricted delivery in accordance with U.S. Postal Service regulations. We reversed the trial court and voided the default judgment. In our decision we referred to both the failure to mark the "Restricted Delivery" box *and* the recipient who was not authorized to receive restricted mail:

> There was no evidence that appellee had directed the summons and complaint to be mailed with restricted delivery. Nor was there any evidence that appellant had specifically authorized, in writing, that L.D. Madden was to be his agent to receive mail. Consequently, the default judgment was void *ab initio*, and the trial court erred in denying appellant's motion to set it aside.

298 Ark. at 463; 768 S.W.2d at 532.

The facts in this case are distinguishable from the *Wilburn* case. Delivery was made in this case as if the "Restricted Delivery" box had been marked. Moreover, in this case R.L. Wright was clearly authorized by The Corporation Company to receive restricted deliveries.

■ CMS next argues that R.L. Wright could not accept service for The Corporation Company under Ark. R. Civ. P. 4(d)(5), because that rule limits service on a domestic corporation to delivery of the complaint and summons to "an officer, partner other than a limited partner, managing or general agent, or any agent authorized by appointment or by law to receive service of summons." Here, CMS is a domestic corporation with The Corporation Company as its agent for service of process. Mr. Wright was the agent authorized to receive restricted and unrestricted mail, including process, for The Corporation Company. Indeed, Wright did sign for and accept the process sent by mail to The Corporation Company pursuant to Rule 4(d)(8)(A). We find no merit in CMS's argument.

■ In the same vein, CMS points to the Arkansas Code and

specifically to a statute directed to service of process when a corporation is the registered agent, which is the situation in the case before us:

> Service of any process, notice, or demand upon a corporate registered agent, as agent, may be had by delivering a copy of the process, notice, or demand to the registered agent, president, vice-president, the secretary, or an assistant secretary of the corporate registered agent.

Ark. Code Ann. § 4-26-503(a)(2) (1987). But, again, Rule 4(d)(8)(A) clearly provides for service by mail to be received by an agent of the addressee. Accordingly, the argument of CMS is without merit. We note that alternative means of serving process, such as the alternative set out in Rule 4(d)(8)(A), are contemplated under the statute advanced by CMS in support of its argument:

> (c)   Nothing herein contained shall limit or affect the right to serve any process, notice, or demand required or permitted by law to be served upon a corporation in any other manner now or hereafter permitted by law.

Ark. Code Ann. § 4-26-503(c) (1987).

CMS finally argues unavoidable casualty or excusable neglect under Ark. R. Civ. P. 55(c) and unavoidable casualty or misfortune under Ark. R. Civ. P. 60(c)(7).[1] In our cases, we have recognized that defaults are not favored in the law and that a default judgment may be a harsh and drastic result affecting the substantial rights of a party. *See Burns* v. *Madden,* 271 Ark. 572, 609 S.W.2d 55 (1980). CMS offers as grounds for relief that it contacted its insurance carrier on receipt of the complaint and summons, and the carrier agreed to defend the action on behalf of CMS. The carrier apparently reneged subsequently and advised CMS to demand a defense by the general contractor. This was done, and according to CMS the general contractor agreed to assume the defense. No defense, however, was mounted by the

---

[1] By Per Curiam order effective February 1, 1991, Rule 60(c) was amended to apply to judgments other than a default judgment. Subparagraph (7) of Rule 60(c) was deleted and replaced by former subparagraph (8). Rule 55(c) was amended to include "mistake," "inadvertence," and "surprise" as grounds for setting aside a default judgment.

general contractor.

■■ We have held in the past that misunderstandings about who will defend an action are not sufficient to show unavoidable casualty or misfortune under the old Rule 60(c). *See McGee* v. *Wilson*, 275 Ark. 466, 631 S.W.2d 292 (1982). And we have further held that a party cannot invoke the aid of this court under Rule 60(c) when that party ignored the action and failed to stay informed. *See Diebold* v. *Myers General Agency, Inc.,* 292 Ark. 456, 731 S.W.2d 183 (1987); *Jetton* v. *Fawcett*, 264 Ark. 69, 568 S.W.2d 42 (1978).

■■ Nor do we hold that the misunderstanding on the part of CMS is sufficient to constitute excusable neglect. Unlike the case of *Burns* v. *Madden*, where the attorney for the plaintiff had previously represented the defendant and had advised the defendant to contact his insurance carrier, here there was no previous attorney/client relationship involved and no potential for that kind of misunderstanding to develop. There is no question that there was neglect by CMS. The only question is whether it was excusable. The trial court's remarks on this point are instructive:

> I don't think that because their client made a deal with the contractor or with the insurance company or with someone else and then forgot about it and didn't follow up, I don't think that's excusable neglect or unavoidable casualty. I think that's not attending to your business.

We agree. CMS did nothing to assure that the general contractor was indeed defending it. And four and one-half months did pass from the date of filing the complaint to the date of entry of a default judgment during which time CMS apparently did not monitor the case. More was required of CMS than was shown in this case, and that formed the basis for the trial court's finding. We have previously held that the decision to grant or deny a motion to set aside a default judgment lies within the sound discretion of the trial court, and the question on appeal is whether the trial court abused that discretion. *See Burns* v. *Madden; Jetton* v. *Fawcett*, 264 Ark. 69, 568 S.W.2d 42 (1978). There was no abuse of discretion in this case.

Affirmed.

DUDLEY and NEWBERN, JJ., dissent.

CORBIN, J., not participating.

DAVID NEWBERN, Justice, dissenting. The question in this case is whether the service of process was defective. The Rule governing service by mail is Ark. R. Civ. P. 4(d)(8)(A) which provides, in relevant part:

> Service of a summons and complaint upon a defendant . . . may be made by the plaintiff or an attorney of record for the plaintiff by any form of mail addressed to the person to be served with a return receipt requested and delivery restricted to the addressee or the agent of the addressee.

Because delivery was not "restricted to the addressee or the agent of the addressee," there was no compliance with this provision.

The Court's opinion makes much of the fact that a person authorized to receive restricted deliveries actually received the process, and the fact that in holding service was invalid because delivery was not restricted in *Wilburn* v. *Keenan Companies, Inc.*, 298 Ark. 461, 768 S.W.2d 531 (1989), we mentioned that the recipient was not a person authorized to receive restricted delivery. That does not cure the problem. The fact remains that the plaintiff did not choose a form of mail with delivery restricted. The service was defective no matter who received it.

Rule 4(e)(3) was amended in 1983 to make requirements for mailing of service outside Arkansas consistent with the mailing requirements for service in the State. The Reporter's Note accompanying the 1983 revision makes it clear with the "restricted delivery" contemplated is the method of delivery so described in postal service regulations. In the *Wilburn* case we discussed the applicable postal regulation, pointing out that Section 933.41 of the postal regulations directs carriers to deliver mail marked "Restricted Delivery" only to the addressee or agent.

The majority opinion also refers that portion of Rule 4(d)(8)(A) which states "Service pursuant to this paragraph shall not be the basis for . . . default . . . unless the record contains a return receipt signed by the . . . agent of the addressee." All that needs to be said about this segment of the

Rule is that service was clearly not had "pursuant to this paragraph" because delivery was not restricted to the addressee or agent of the addressee.

It is easy to make light of the failure to "check the box" indicating restricted delivery, but unless the box is checked, the mail is not marked "Restricted Delivery," and delivery is thus not restricted. The problem caused by this decision is a serious one. R.L. Wright was not given the process as a result of his having been designated to receive restricted deliveries. He received it because he happened to be the person who showed up. Holding that the service was valid because a person authorized to receive restricted deliveries actually received it is analogous to holding that actual notice is sufficient even though the law did not require that notice be given directly to the defendant, a practice thoroughly condemned as a violation of due process in *Wuchter* v. *Pizzuti*, 276 U.S. 13 (1928). Actual knowledge of a proceeding does not validate defective process. *Tucker* v. *Johnson*, 275 Ark. 61, 628 S.W.2d 281 (1982). *See also Wilburn* v. *Keenan Companies, Inc., supra.*

As we wrote in the *Wilburn* case,

> Statutory service requirements, being in derogation of common law rights, must be strictly construed and compliance with them must be exact. *Edmonson* v. *Farris*, 263 Ark. 505, 565 S.W.2d 617 (1978). The same reasoning applies to service requirements imposed by Rules of Court. Proceedings conducted where the attempted service was invalid render judgments arising therefrom void *ab initio. Halliman* v. *Stiles*, 250 Ark. 249, 464 S.W.2d 573 (1971); *Edmonson* v. *Farris*, 263 Ark. at 508. In cases where judgments are void, proof of a meritorious defense is unnecessary. *Edmonson* v. *Farris*, 263 Ark. at 508.

In *Edmonson* v. *Farris, supra*, the Trial Court had determined that the fact that service was not precisely in accordance with the then applicable statutory requirement was a mere "technical distinction" insufficient to invalidate the service. Writing for a unanimous Court, Justice Frank Holt made short work of responding to that position by stating that the service requirements of the statute are in derogation of the common law and must be "exactly complied with." Otherwise, the service

results in void judgment.

The compliance in this case was not exact. The service was defective. The judgment is void.

I respectfully dissent.

DUDLEY, J., joins in this dissent.