Dr. Lisa McGRAW *v.*
Scott W. JONES and Lizabeth Jones, Husband and Wife

06-48                                    238 S.W.3d 15

Supreme Court of Arkansas
Opinion delivered June 29, 2006
[Rehearing denied September 7, 2006.*]

---

* HANNAH, C.J., and CORBIN and GUNTER, JJ., would grant rehearing.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: L. Kyle Heffley and Tamla J. Lewis, for appellant.

*Law Offices of Charles Karr, P.A.*, by: Charles Karr, for appellees.

ANNABELLE CLINTON IMBER, Justice. This case is an appeal from a default judgment in a medical-malpractice case. Appellant, Dr. Lisa McGraw, a doctor with Mercy Health Systems of Northwest Arkansas, was one of three named defendants in a medical-malpractice case filed by Appellees, Scott and Lizabeth Jones. Appellant was properly served with process on December 2, 2004. Upon receiving the complaint and summons, Appellant gave the documents to her office staff, who, in turn, placed them in interdepartmental mail to the in-house attorney, Heather Lipke. According to Ms. Lipke's affidavit, the documents never reached her. Appellant never filed an answer or other responsive pleading.

On March 22, 2005, Appellees filed a motion for default judgment against Appellant. On March 23, 2005, the circuit court entered a default judgment against Appellant and a dismissal without prejudice as to the remaining defendants. The court scheduled a hearing on April 18, 2005, for the purpose of determining the amount of damages sustained by Appellees. At that hearing, Appellees presented evidence on their actual damages totaling around $43,000 and past and future pain and suffering. The circuit court awarded $500,000 in damages. Thereafter, Appellant was served with a writ of garnishment on May 17, 2005, and on June 2, 2005, she filed a motion to set aside default judgment. The circuit court held a hearing and denied the motion, as well as Appellant's subsequent motion to clarify or amend its prior order, on October 3, 2005. Appellant then filed a notice of appeal on October 18, 2005. As the appeal involves the interpretation and constitutional challenge of Ark. R. Civ. P. 55, we have jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(b)(6) (2005).

## I. Excusable Neglect

Appellant first argues that the circuit court erred in failing to set aside the default judgment because Appellant's failure to file an answer was the result of excusable neglect under Ark R. Civ. P. 55(c) (2005). Ark. R. Civ. P. 55 provides in relevant part:

*(a) When Entitled.* When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, judgment by default may be entered by the court.

*(b) Manner of Entering Judgment.* The party entitled to a judgment by default shall apply to the court therefor, but no judgment by default shall be entered against an infant or incompetent person. If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as it deems necessary and proper and may direct a trial by jury.

*(c) Setting Aside Default Judgments.* The court may, upon motion, set aside a default judgment previously entered for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) the judgment is void; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; or (4) any other reason justifying relief from the operation of the judgment. The party seeking to have the judgment set aside must demonstrate a meritorious defense to the action; however, if the judgment is void, no other defense to the action need be shown.

Ark. R. Civ. P. 55(a)-(c) (2005). We have recognized that defaults are not favored in the law and that a default judgment may be a harsh and drastic result affecting the substantial rights of a party. *CMS Jonesboro Rehab., Inc. v. Lamb*, 306 Ark. 216, 812 S.W.2d 472 (1991). Notwithstanding, we have declined to set aside default judgments where the neglect or mistake is inexcusable. *Volunteer Transp., Inc. v. House*, 357 Ark. 95, 162 S.W.3d 456 (2004); *Maple Leaf Canvas, Inc. v. Rogers*, 311 Ark. 171, 842 S.W.2d 22 (1992). The standard by which we review the granting of a default judgment and the denial of a motion to set aside the default judgment is whether the circuit court abused its discretion. *Volunteer Transp., Inc. v. House, supra.*

In this case, Appellant offers as grounds for relief that she followed Mercy's policy in handling her complaint. Specifically, after receiving the summons and complaint, she turned the papers

over to the senior office administrator "who assured her the matter would be taken care of." In turn, the administrator attempted to ensure that the lawsuit papers were forwarded to Mercy's in-house attorney, but for reasons unknown, the papers never reached the attorney. Appellant submits that her actions in relying on the assurances by the office staff, though neglectful, were not inexcusable neglect. As support for that proposition, she suggests that this case is similar to *Hubbard v. Shores Group, Inc.*, 313 Ark. 498, 855 S.W.2d 924 (1993), where we affirmed the trial court's holding that the defendant's failure to answer the summons constituted excusable neglect. However, the facts in *Hubbard* are markedly different from those in the instant case.

In *Hubbard,* the plaintiff filed suit against Mid-Arkansas Tom's, The Shores Group, Inc., and 1st Service, Inc. Service of process on Mid-Arkansas Tom's was had by serving its president, Jerry Wardlaw. Wardlaw testified that five days before being served, he learned that his wife of twenty-seven years had breast cancer that would require surgery and extensive post-surgical treatment. Furthermore, on the day he was served, his bank called to inform him of an overdraft and he discovered that an employee had stolen $6,000 in deposits. Finally, he testified that the style of the complaint was "Harold Hubbard v. The Shores Group, Inc." and that he did not realize Mid-Arkansas Tom's was also included in the suit. Mid-Arkansas Tom's failed to answer the complaint, and a default judgment was entered against it. A month later, Mid-Arkansas Tom's filed a motion to set aside the default judgment, which the court granted. On appeal, we affirmed the circuit court's decision to set aside the default judgment, holding, "It is hard to imagine a more compelling set of facts than those of this case for a finding of excusable neglect." *Id.* at 502, 855 S.W.2d at 927. In the instant case, Appellant has demonstrated no extenuating circumstances rising to the level of the facts in *Hubbard.* Additionally, in *Hubbard* we reviewed the circuit court's finding of excusable neglect for an abuse of discretion; here we must review the circuit court's finding of *inexcusable* neglect for an abuse of discretion.

Moreover, we have held that failure to attend to business is not excusable neglect. *Volunteer Transp., Inc. v. House*, 357 Ark. 95, 162 S.W.3d 456 (2004); *Maple Leaf Canvas, Inc. v. Rogers*, 311 Ark. 171, 842 S.W.2d 22 (1992); *CMS Jonesboro Rehabilitation, Inc. v. Lamb*, 306 Ark. 216, 812 S.W.2d 472 (1991). The facts in *CMS Jonesboro Rehabilitation, Inc. v. Lamb*, where this court rejected the

notion that relying on outside assurances that the lawsuit would be handled should constitute sufficient action to avoid a default judgment, are almost indistinguishable from the instant case. In *CMS*, the defendant CMS contacted its insurance carrier about defending an action on behalf of CMS. The insurance company initially agreed, but then reneged and advised CMS to contact the general contractor, which CMS did. *Id.* at 221, 812 S.W.2d at 475. The general contractor agreed to assume the defense, but no defense was ever mounted. Four and a half months after that, a default judgment was entered against CMS, and another four and a half months elapsed before CMS moved to set aside the judgment. *Id.* at 218, 812 S.W.2d at 473. In affirming the circuit court's finding that the actions did not constitute excusable neglect, we said

> CMS did nothing to assure that the general contractor was indeed defending it. And four and one-half months did pass from the date of filing the complaint to the date of entry of a default judgment during which time CMS apparently did not monitor the case. More was required of CMS than was shown in this case, and that formed the basis for the trial court's ruling.

*Id.* at 222, 812 S.W.2d at 476.

These same arguments apply to the instant case. Here, Appellant did nothing to ensure that a defense was being mounted on her behalf by Mercy's in-house attorney. Indeed, she did not even follow up to make sure that the attorney received the papers. Over three months passed between the date Appellant received the summons and complaint and the date the court entered the default judgment. Yet, during that period of time, she did nothing to inquire about the status of the suit. Just as in the case of *CMS*, more was required of Appellant than was shown, and her failures do not amount to excusable neglect. *CMS Jonesboro Rehab., Inc. v. Lamb, supra; see also Sun Gas Liquids Co. v. Helena Nat'l Bank*, 276 Ark. 173, 633 S.W.2d 38 (1982) (no excusable neglect where secretary of garnishee averred that she had mailed notice of garnishment to home office in Pennsylvania and was only told later that it never arrived).

Further, the fact that Appellant may have offered a meritorious defense to the underlying claim is not sufficient to support setting aside the default judgment. While it is true that defendants wishing to set aside default judgments must demon-

strate a meritorious defense to the action, the defense in and of itself is not sufficient without first establishing one of the grounds laid out in Ark. R. Civ. P. 55(c). *Southern Transit Co. v. Collums*, 333 Ark. 170, 966 S.W.2d 906 (1998); *Tharp v. Smith*, 326 Ark. 260, 930 S.W.2d 350 (1996). In her argument, Appellant sets forth in detail the "meritorious defense" that could have been presented at trial and suggests that it would be unfair to allow the judgment against Appellant to stand. While these arguments may be true and the default judgment against Appellant may seem unfair, the judgment need not be set aside absent a showing of some Rule 55(c) ground. Our court elaborated on this idea in *Tharp v. Smith, supra*:

> Here, appellant argues that the "reason" to set aside the judgment is because he has a meritorious defense and a miscarriage of justice will result if he is not allowed to present it. This argument clearly circumvents the dual requirements of Rule 55(c). Moreover, it ignores the cogent fact that the reason Appellant was not allowed to present a defense in the first place is because of his own unexcusable [sic] default.

*Id.* at 265, 930 S.W.2d at 353. Similarly, even though the default judgment in the instant case may seem unfair, it cannot be set aside absent a showing of one of the 55(c) grounds. As Appellant failed to demonstrate that her failure to answer the summons was excusable neglect, she was not entitled to have the default judgment set aside. Thus, we affirm the circuit court on this point.

## II. Hearing on Damages

Appellant's second argument for reversal is that the circuit court erred in failing to provide notice of the hearing on damages to Appellant or, in the alternative, in failing to grant a new hearing on damages. Though Appellant recognizes that "Rule 55 is silent as to what notice, if any, a defaulting defendant is due with respect to a damages hearing," Appellant nonetheless maintains that the circuit court should have provided notice of the hearing. In support of this assertion, Appellant offers cases holding that a defendant in a default-judgment case has the right to cross-examine the plaintiff's witnesses, to introduce evidence in mitigation of damages and to challenge the sufficiency of the evidence on appeal. *See, e.g., Clark v. Michael Motor Co.*, 322 Ark.

570, 910 S.W.2d 697 (1995); *B&F Eng'g, Inc. v. Cotroneo,* 309 Ark. 175, 830 S.W.2d 835 (1992). While these cases do allow a defendant to present evidence at the damages hearing, they make no statement regarding the defendant's right to notice of the hearing. Appellant suggests that because defendants have the right to cross-examine witnesses and present mitigating evidence, they must also have the right to notice of the hearing; such an assumption, however, is not necessarily true. A defendant could have the right to introduce evidence at the hearing if he or she is present, but not have the right to notice of the hearing. Indeed, we have held that although a hearing is required to determine the amount of damages, subsection (b) of Rule 55 does not require that notice of the hearing be given to a defaulting defendant who has not appeared. *Tharp v. Smith, supra; Divelbliss v. Suchor,* 311 Ark. 8, 841 S.W.2d 600 (1992). The court in *Divelbliss* explained as follows:

> Some jurisdictions require that notice of the hearing be given to the defaulting defendant even when he has never appeared, but the Arkansas rule, A.R.C.P. 55(b), does not require that notice be given to a defaulting defendant who has not appeared. Perhaps the reason is that it would be superfluous to again serve a defendant who already received one notice but failed on an ongoing basis to respond.

*Divelbliss v. Suchor,* 311 Ark. at 16, 841 S.W.2d at 604. Here, the hearing on damages was on April 18, 2005, and Appellant did not make her first appearance in the case until June 2, 2005, when she filed her motion to set aside the default judgment. Thus, we conclude that the circuit court did not err in failing to give Appellant notice of the hearing on damages or, in the alternative, in failing to grant a new hearing on damages.

### III. Rule 55 and Due Process

For her penultimate argument on appeal, Appellant asks us to declare Ark. R. Civ. P. 55 unconstitutional for failing to require notice of the hearing on damages. We construe court rules using the same canons of construction as are used to construe statutes. *JurisDictionUSA. v. LoisLaw.com,* 357 Ark. 403, 183 S.W.3d 560 (2004). In support of her argument, Appellant cites numerous cases holding that due process requires that a person be given notice and a reasonable opportunity for a hearing before being deprived of property. However, as noted by our court in

*Divelbliss*, defendants suffering from default judgments *have* been given notice of the pending suit through service of the original complaint and summons. *Divelbliss v. Suchor,* 311 Ark. at 8, 841 S.W.2d at 600. Further, such defendants are presumed to know that if they do not respond, they will suffer default judgments and may suffer a monetary judgment against them. Thus, the requirements of due process are met and Rule 55 is not unconstitutional.

### IV. Sufficiency of Evidence on Damages

Appellant's final challenge is to the sufficiency of the evidence on damages. In civil cases where the trial judge, rather than a jury, sits as the trier of fact, the correct standard of review on appeal is not whether there is any substantial evidence to support the finding of the court, but whether the judge's findings are clearly erroneous or clearly against the preponderance of the evidence. *Schueck v. Burris,* 330 Ark. 780, 957 S.W.2d 702 (1997). At the damages hearing, the circuit court received evidence solely from the Appellees in this case, with each testifying to the damages sustained by Mr. Jones as a result of a pulmonary embolism he suffered. Appellees introduced medical statements and bills totaling $37,644, prescription bills in the amount of $714, and lost wages totaling $6,673. Additionally, both Mr. and Mrs. Jones testified to the extensive pain and suffering experienced by Mr. Jones. He testified that he could no longer do the same activities he had been able to do before the embolism. Counsel for Appellees argued that though the actual out-of-pocket expenses only amounted to approximately $43,000, the "more significant elements of damage are the pain and suffering that he went through and the mental anguish he had and continues to have." The circuit court ultimately awarded $500,000 in damages.

Appellant argues that the $500,000 judgment was arbitrary and not supported by sufficient evidence. Appellant notes that the mental anguish testified to by Mr. Jones was largely speculative, including fear of overexertion and damage to organs. Furthermore, Appellant points to the complete lack of expert testimony on the issue of future pain and suffering or permanent disability. Appellees respond that expert testimony is not required in all cases and that the circuit court's award was not an abuse of discretion.

In this case, Appellees presented evidence of actual out-of-pocket expenses in the amount of approximately $43,000, but the circuit court awarded $500,000 in damages. Presumably, the court awarded over $450,000 for past and future pain, suffering, and

mental anguish. Evidence of future pain and suffering and permanent disability must be established with reasonable certainty and must not be left up to speculation or conjecture. *Volunteer Transp., Inc. v. House*, 357 Ark. at 103, 162 S.W.3d at 461. In *Volunteer Transport*, our court reversed an award of damages where the only evidence offered to prove the nature, extent, and permanency of appellee's injury was his own self-serving hearsay testimony. *Id.* at 103, 162 S.W.3d at 460. Similarly, in the instant case, Appellees did not offer any evidence other than their own self-serving testimony to prove the nature, extent, and permanency of their injuries. The court in *Volunteer Transport* also noted, "Furthermore, the record is silent as to how the trial court arrived at the damage amounts." *Id.* at 104, 162 S.W.3d at 461. Similarly, in the instant case, it appears the circuit court arrived at the $500,000 figure merely at the suggestion of counsel for Appellees. The following colloquy occurred between counsel for Appellees and the court at the hearing on damages:

> COUNSEL: . . . So I think in this situation the pain and suffering and the mental anguish that follow are quite significant. I don't know if you want me to give you a number that we're asking for or if you want to decide that yourself since you are the fact finder, I guess, in this situation. If you want a number, we'll give you a number, or we can leave it to your discretion.

> THE COURT: Well, [counsel], I'm not going to tell you how to try your case. You may make any argument you want to.

> COUNSEL: Okay. If I may have a moment, your Honor.

> THE COURT: Sure.

> [A discussion was had off the record.]

> COUNSEL: Your Honor, as I was discussing, the pain and suffering and the mental anguish are probably the biggest elements here, and when you combine those with the special damages that we've put into evidence, I would think — and this would include not only his pain and suffering and mental anguish but Mrs. Jones' loss of consortium, but a total damage award of $500,000 I

think in this case would be fair and reasonable. In light of his ordeal through this we believe that's a fair judgment.

THE COURT: All right. Court will be in recess.

COUNSEL: Your Honor, I don't know if this needs to be on the record, but I did prepare a precedent if you want to look at it.

THE COURT: Ok. I'll take it.

[A recess was had.]

. . . .

THE COURT: Mr. and Mrs. Jones, I'm going to grant you judgment against the defendant, Dr. Lisa McGraw, in the amount of $500,000. [Counsel], here is your judgment.

The above colloquy provides no insight as to how counsel or the court arrived at the figure of $500,000, a figure over ten times the amount of Appellees' actual out-of-pocket medical bills and lost wages. Therefore, based on this record, we must hold that such an award is arbitrary and not supported by sufficient evidence. We reverse and remand this matter for a new hearing on damages.

Affirmed in part; reversed and remanded in part.

GLAZE, J., concurring.

HANNAH, C.J., CORBIN, and GUNTER, JJ., concurring in part; dissenting in part.

TOM GLAZE, Justice, concurring. Although recovery will not be denied merely because the amount of damages is hard to determine, damages must not be left to speculation and conjecture. *Vowell v. Fairfield Bay Comm. Club, Inc.*, 346 Ark. 270, 58 S.W.3d 324 (2001); *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999). I agree with the majority opinion that this case must be remanded for a new hearing on damages. It is well settled that the mere fact that a plaintiff has incurred medical expenses and the defendant's liability has been established does not automatically trans-

late into a damage award equal to those expenses. *See Young v. Barbera*, 366 Ark. 120, 233 S.W.3d 651 (2006) (Glaze, J., dissenting)[1]; *Depew v. Jackson*, 330 Ark. 733, 957 S.W.2d 177 (1997). The damages awarded could be less. For example, assuming a plaintiff put on actual evidence that he had $500,000 in damages, the trial court, sitting as fact-finder, could award $500,000, or even less, so long as the award of damages is reasonable. Here, the amount of damages awarded was unreasonable, given the scant evidence and testimony introduced at the hearing on damages. No proof was introduced at that hearing to support the $500,000 award, other than the Joneses' attorney's suggestion that such an amount would be "fair and reasonable." As the majority notes, evidence of future pain and suffering must be established with reasonable certainty and must not be left to speculation and conjecture on the part of the fact-finder. *See Volunteer Transport, Inc. v. House*, 357 Ark. 95, 103, 162 S.W.3d 456, 461 (2004). Here, neither expert testimony nor other objective lay testimony was offered by the Joneses to corroborate the claims presented to the trial court. Where the record is silent as to how the trial court arrived at the amount of damages, as was the situation in both this case and the *Volunteer Transport* case, the award of an unreasonably large amount of damages must be reversed.

DONALD L. CORBIN, Justice, concurring in part and dissenting in part. While I agree with the majority opinion affirming the grant of a default judgment in the instant case, I respectfully dissent with regard to the reversal of damages awarded by the trial court. It is well settled that when reviewing an allegation that a damages award was excessive, this court reviews the proof and all reasonable inferences most favorably to the appellees and determines whether the verdict is so great as to shock the conscience of this court or demonstrate passion or prejudice on the part of the trier of fact. *See Houston v. Knoedl*, 329 Ark. 91, 947 S.W.2d 745 (1997); *Collins v. Hinton*, 327 Ark. 159, 937 S.W.2d 164 (1997). In the instant case,

---

[1] In the *Young* case, the plaintiff claimed medical expenses arising from chiropractic treatments she incurred as a result of injuries sustained in a fight with a friend. The trial court agreed that the plaintiff was entitled to recover the chiropractic expenses, but did not award the full amount the plaintiff requested, because, after questioning the plaintiff about the nature and extent of her injuries, the court found the plaintiff and her chiropractor were not entirely credible.

however, the majority completely ignores the evidence presented by Appellees that supports the damages awarded by the trial court.

In reversing the damages award, the majority relies on *Volunteer Transport, Inc. v. House*, 357 Ark. 95, 162 S.W.3d 456 (2004), for the proposition that the testimony of the appellee is insufficient evidence to support a damages award. In that case, however, we also pointed out that the testimony of an injured party alone, in some cases, can provide a sufficient foundation for the introduction of medical expenses incurred. *Id.; see also Eggleston v. Ellis*, 291 Ark. 317, 724 S.W.2d 462 (1987); *Bell v. Stafford*, 284 Ark. 196, 680 S.W.2d 700 (1984). Clearly, this court has not heretofore established a bright-line rule that the testimony of the injured party alone is insufficient evidence, and I think this case is a perfect example of how such testimony can suffice.

At the damages hearing, Mr. Jones testified about his ankle surgery and the subsequent pain in his calf. He explained that because of that pain, he initially saw Dr. Coker, his surgeon, who referred him to a radiologist, Dr. Pope. The radiologist did a Doppler scan of the leg and determined that Mr. Jones had a blood clot. The radiologist then sent Mr. Jones back to Dr. Coker, but Dr. Coker referred Mr. Jones to his family doctor. Because his family doctor was out of town, Mr. Jones ultimately scheduled an appointment with Dr. McGraw. Dr. McGraw examined Mr. Jones's leg and told him that he needed to consult with Dr. Coker and Dr. Pope. Thereafter, Dr. McGraw returned and told Mr. Jones that the blood clot was superficial and prescribed some pain medicine for him. Later, Mr. Jones collapsed and was taken to the hospital where doctors discovered a pulmonary embolism. He was ultimately transferred to Washington Regional Medical Center, where he was in and out of the critical care unit. According to Mr. Jones, this incident rendered him unable to work for thirty days and then once he returned to work, he could only stay for a little while at a time. He testified that he fears that the time off will affect his career. He explained that he tires more easily and cannot do all the things that he did before.

Lizabeth Jones testified about her husband's ordeal and stated that he no longer helps her with routine household chores and that such things are now left for her to do. She also stated that her husband is fearful of engaging in intercourse and that their relationship has changed since the embolism. She also testified that

she suffers from Epstein-Barr Syndrome, which was aggravated by the stress that she was under because of her husband's embolism.

In sum, the Joneses' testimony is evidence supporting the trial court's award of damages. It is axiomatic that a trial judge, as fact-finder, is the sole evaluator of credibility and is free to believe or disbelieve the testimony of any witness. *Young v. Barbera*, 366 Ark. 120, 233 S.W.3d 651 (2006); *Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). Here, he clearly believed the Joneses' testimony and determined that the damages requested were warranted. The majority opinion is doing nothing more than second guessing the trial court's decision in this regard. For this reason, I dissent.

HANNAH, C.J., and GUNTER, J., join in this dissent.