# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3753

_____

| | | |
|---|---|---|
| Jose Luis Gonzalez, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| United States of America, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 22, 2011
Filed: June 18, 2012

_____

Before RILEY, Chief Judge, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Jose Luis Gonzalez filed suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, alleging that employees of the United States negligently caused significant delay in the proper treatment of leg injuries that he suffered while an inmate at the Federal Correctional Institution in Forrest City, Arkansas. After a two-day bench trial, the district court[1] found the government liable and awarded compensatory damages of $813,000. On appeal, the government argues that the

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

amount of damages is excessive. Under the deferential standard of review that applies to an award of damages in a bench trial, we affirm.

## I.

On July 28, 2004, Gonzalez suffered an injury to his left leg and ankle in a prison-sanctioned softball game when another player slid into second base and struck Gonzalez. The next morning, Gonzalez self-reported to the prison's Health Services Department for medical treatment of his ankle and leg. Nurse G. Toliver told Gonzalez that "walk-ins" were not allowed and instructed him to return the next day. When Gonzalez returned on the morning of July 30, Nurse Toliver told him that he could not be treated and that he must make an appointment for August 2, 2004.

Gonzalez returned to the Health Services Department on August 3, 2004, and Physician's Assistant Yvette Toro examined him. According to Toro's notes, Gonzalez complained of pain in his left ankle "due to [a] sports injury" and assessed his pain level at a "6," noting that the pain is "worse at night." Toro requested x-rays of Gonzalez's left knee and ankle and gave him Motrin or Ibuprofen. Gonzalez requested crutches or a wheelchair, but the department did not provide them. Gonzalez also saw Dr. J. Edna Prince, the department's Clinical Director. While Gonzalez and Dr. Prince offered differing accounts of this meeting, Dr. Prince did not give Gonzalez a wheelchair or crutches or additional pain medication.

On August 17, 2004, Gonzalez returned to the Health Services Department for x-rays. A technician, however, attempted to perform an x-ray of Gonzalez's chest, because Toro's treatment order mistook Gonzalez for a similarly-named former inmate with a malady of the chest. Upon discovering the error, the technician told Gonzalez that he would have to reschedule the x-ray of his leg.

On August 26, 2004, the Health Services Department performed an x-ray of Gonzalez's leg, which revealed fractures of his fibula and ankle. After discovering the seriousness of Gonzalez's injury, Dr. Prince sent him to a local hospital where he was fitted with a supportive walking boot.

The next morning, Dr. Prince ordered Gonzalez to a hospital in Memphis, Tennessee, where a doctor performed surgery on Gonzalez's left leg and ankle. The operation—an "open reduction and internal fixation of medial malleolar fracture with closed treatment of proximal fibular fracture"—required the placement of two screws in Gonzalez's left ankle. With his ankle in a cast, Gonzalez returned to the prison that night. Upon his return, prison officials placed Gonzalez in a Special Holding Unit. Gonzalez referred to this unit as the "hole" or "punishment cell," and claimed that he suffered serious pain without adequate medical care. Dr. Prince, however, stated that the SHU was the appropriate place for Gonzalez until he was mobile.

After three to four weeks in a cast, and another four in a walking boot, Gonzalez was able to place weight on his ankle. The Bureau of Prisons later transferred Gonzalez to another institution and released him from custody on November 14, 2008. Gonzalez was then repatriated to Mexico.

Gonzalez filed suit under the Federal Tort Claims Act, alleging that the Health Services Department and its staff breached duties of care owed to Gonzalez by refusing medical treatment and causing unreasonable delay in the diagnosis and repair of his injury. Gonzalez alleged that the delay in treatment caused him "undue and unnecessary pain and suffering." He demanded $3,000,000 in compensatory damages. The demand for damages sought "at least $10,000 per day" for pain experienced from July 28 through August 3, 2004, and "at least $5,000 per day" for pain suffered from August 3 through August 26, 2004. For August 27 through August 30, 2004, the period immediately after surgery, Gonzalez demanded $20,000 per day. He sought $2000 per month for the rest of his lifetime, due to permanent

disability and arthritic pain. Gonzalez also demanded $2,170,000 to compensate for "mental anguish" suffered between August 2, 2004, and the trial in 2010, a larger proportion of which presumably occurred during the span in August 2004 when Gonzalez was denied treatment and "despaired of ever being treated." Pl.'s Demand for Damages under the Federal Tort Claims Act, at 6.

At a bench trial, the district court heard testimony from Gonzalez's expert witness, Dr. James Keever, a licensed orthopedic surgeon. Dr. Keever gave his opinion, based on a reasonable medical probability, that Gonzalez has developed permanent post-traumatic arthritis of the ankle. According to Dr. Keever, this condition was caused by the delay in treatment and will worsen with time.

The district court found that the government breached its duty of care by failing to treat Gonzalez's ankle in the four weeks prior to the taking of x-rays.[2] The court, relying on Dr. Keever's testimony, also found that Gonzalez "suffered a continuing injury following his surgery on August 27, 2004 that was proximately caused by the [government's] gross negligence." Regarding Gonzalez's pain and suffering, the district court observed:

> [Gonzalez] states that he experiences pain on a constant basis and that his left ankle will not support his normal day-to-day activities. He states he can't perform his work as a mechanic or a contractor because both jobs require prolonged standing, which he is unable to do. [Gonzalez] states that he walks in pain and sleeps in pain, that he can no longer

_____

[2]Prior to trial, the government admitted that it breached the applicable standard of care by failing to obtain an x-ray of Gonzalez's ankle between August 3, 2004 and August 26, 2004. The district court, however, found that the breach began on the morning of July 29, 2004, when Gonzalez first reported to the Health Services Department, and ended on the afternoon of August 26, 2004, when x-rays were taken. The court found that Gonzalez failed to prove that the government breached the standard of care during his post-surgery care.

participate in athletics, and that the left ankle doesn't have the same mobility as the right ankle. For example, [Gonzalez] states that when he stumbles he is unable to recover since the ankle doesn't respond with the same reflexes as his other ankle and he thus falls down, and he states that while he can go up a ladder the problem is going down as the left foot doesn't support his body weight. [Gonzalez] states the ankle is swollen and that he has to keep moving his foot forwards and backwards so that something will release from the pain. He states he can't walk that much and that he cannot carry anything due to the pain, and that when he kneels down he struggles to get up because of the ankle.

The district court awarded Gonzalez $813,000 in compensatory damages. The award consisted of $285,000 for Gonzalez's pain and suffering and mental anguish suffered from the morning of July 29, 2004 until x-rays were taken on August 26, 2004, and $528,000 for the "pain and suffering and mental anguish reasonably certain to be experienced" for the remainder of Gonzalez's expected life, which the court determined to be 22 years.

## II.

The government's sole argument on appeal is that the amount of damages is excessive. The appeal does not challenge the sufficiency of the evidence to support the district court's finding of proximate causation, and the government does not dispute the procedural adequacy of the district court's findings of fact on liability or damages. We are asked only to set aside the district court's chosen award of $813,000.

This court has recognized that while "the amount of damages entered in a non-jury case is a finding of fact and therefore subject to the 'clearly erroneous' standard of review set forth in Fed. R. Civ. P. 52(a), any application of that general standard must take account of the special circumstances in which that kind of factual finding

is rendered." *Overton v. United States*, 619 F.2d 1299, 1304 (8th Cir. 1980). This court has "long subscribed to the view" that excessiveness of an award

> is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result.

*Id*. (quoting *Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 447-48 (8th Cir. 1961)). This has been the law for decades, yet neither Congress nor the State of Arkansas has seen fit to establish guidelines or limits on awards for pain and suffering in this context.

The "special circumstances" and "obvious reasons" counseling in favor of this deferential review include the fact that "[t]here is no precise or exact measuring stick for calculating general damages for pain and suffering." *Taken Alive v. Litzau*, 551 F.2d 196, 198 (8th Cir. 1977). "[A]wards for pain and suffering are highly subjective," *Morrissey v. Welsh Co.*, 821 F.2d 1294, 1301 (8th Cir. 1987), and "[d]epending upon the fact situation, the range between an inadequate award for pain and suffering and an excessive award can be enormous." *Id*. Only if an award is so extreme as to fall outside this "enormous" range of discretion should appellate judges substitute their "highly subjective" valuation of pain and suffering for the district judge's conclusion. And there is no special standard of review for cases involving public funds. The government is treated the same as any other tortfeasor.

The award of $813,000 in this case is generous, but we cannot conclude that the decision of the experienced district judge was "monstrous" or "shocking" or that

-6-

it resulted in a "plain injustice." The government's appeal is based almost entirely on an effort to compare the award in this case with awards in other published decisions. We have observed that "comparisons to other jury verdicts are often not particularly helpful in claims involving noneconomic damages," and that a district court may even abuse its discretion by relying on such comparisons where the facts of the instant case "are not easily comparable to the facts of other cases." *McCabe v. Parker*, 608 F.3d 1068, 1080 (8th Cir. 2010) (internal quotations omitted). The facts of this case are unusual and distinguishable from the cases cited by the government. The proffered authorities do not provide us with an adequate foundation to conclude that the district court's award is so outside the mainstream that we should substitute our subjective evaluation of pain and suffering for the district court's assessment.

The judgment of the district court is affirmed.

RILEY, Chief Judge, dissenting.

As the result of the panel majority's decision, the United States will pay Gonzalez $813,000 in damages for delayed treatment of a broken ankle. These public funds will not reimburse Gonzalez for medical expenses, which the federal government already paid, nor wages lost. The sole purpose of the $813,000 is to compensate Gonzalez for the pain, suffering and mental anguish caused by the government's negligent delay in diagnosing his prison softball game injuries. Because I believe "the award [is] clearly erroneous and plainly unjust," Hysell v. Iowa Pub. Serv. Co., 534 F.2d 775, 787 (8th Cir. 1976), I respectfully dissent.

The district court's award consisted of two parts: (1) $285,000 to compensate for the pain, suffering and mental anguish Gonzalez experienced during the twenty-eight and one-half days his injury remained undiagnosed; and (2) $528,000 to compensate for the post-traumatic arthritis pain, suffering and mental anguish

Gonzalez is likely to experience for the remainder of his life. Both calculations trouble me.

The $285,000 award for past pain and suffering is troublesome because it is significantly more than the $170,000 Gonzalez indicated was just compensation for this period of time.[3] In his demand for damages, Gonzalez demanded "at least $10,000 per day" in compensation for the five days from July 29 to August 2, and "at least $5,000 per day" for the next twenty-four days. The district court noted this variance in the amounts Gonzalez demanded, but decided $10,000 per day was appropriate for the entire period "[g]iven the gross negligence of the United States . . . and its effect on [Gonzalez]."

But the degree of the government's negligence should not affect the amount of the award because the FTCA does not permit punitive damages. See 28 U.S.C. § 2674. The actual effect the government's negligence had on Gonzalez is thus the sole justification for awarding any damages throughout the time period at issue. Gonzalez admitted his pain was at its maximum during the five days immediately after his injury and thereafter diminished. As Gonzalez recognized in his demand, the daily award for pain, suffering and mental anguish likewise should diminish.

As the result of the district court's decision, Gonzalez received $115,000 more than he suggested was reasonable, a 67% increase. If there exists a justification for

---

[3]I recognize Gonzalez demanded an additional $2,170,000 for the ancillary mental anguish he claimed he suffered. The district court presumably found little or no merit in this aspect of Gonzalez's request because the district court did not mention this demand nor cite it when announcing the award. Instead, the district court quoted and cited Gonzalez's more specific demand for the physical pain, suffering and mental anguish linked to the time period at issue. My focus is upon these specific demands, in which Gonzalez identified amounts totaling $170,000 as "just compensation."

such a result, the district court did not articulate that justification as required by Fed. R. Civ. P. 52(a)(1).  See King v. United States, 553 F.3d 1156, 1161 (8th Cir. 2009) (explaining Rule 52(a)(1) requires the district court to provide sufficient factual findings for our court to engage in meaningful review); Arpin v. United States, 521 F.3d 769, 776 (7th Cir. 2008) (also explaining under Rule 52(a)(1), the district court must indicate its reasoning process connecting the evidence to the amount awarded). I would not affirm this unjustified portion of the award.

Even more troubling is the award of $528,000 for Gonzalez's future pain and suffering, which purports to compensate Gonzalez $2,000 each month for the remainder of his life, estimated at twenty-two years.[4]  The district court reasoned $2,000 per month was justified "[c]onsidering the nature, extent, and permanency of [Gonzalez's] injury, and the pain and suffering and mental anguish reasonably certain to be experienced in the future."  Other than this conclusory statement, the district court provides no explanation or description of *what* pain and suffering and *what* mental anguish Gonzalez is likely to experience or *why* $2,000 per month is an appropriate amount.  The figure, taken from Gonzalez's demand for damages, appears to be "plucked out of the air, and . . . cannot be squared with the duty of reasoned, articulate adjudication imposed by Rule 52(a)."  Arpin, 521 F.3d at 776.

The district court also failed to distinguish the future pain, suffering and mental anguish Gonzalez is likely to experience as the result of the government's delay in treatment from any pain, suffering and mental anguish caused by the fracture itself, for which the government bears no responsibility.  I cannot determine if the district court distinguished between the two causes.  Was all of Gonzalez's future pain,

---

[4]In all actuality, the lump-sum award will compensate Gonzalez more than $2,000 per month given the increased value of the award over time if Gonzalez prudently invests the money.

suffering and mental anguish related to post-traumatic arthritis caused by the delay in treatment?  Did the fracture itself cause any of this future suffering?

Finally, I do not believe the evidence supports a $528,000 award.  Aside from Gonzalez's subjective complaints made for this litigation, the only evidence I have found supporting the award are the affidavits and testimony of Dr. James Keever, who never treated Gonzalez, or even met Gonzalez, and whose hypothetical observations on the subject—formed before seeing Gonzalez's deposition—were general and non-specific to Gonzalez.

It is questionable whether such sparse evidence can support such a generous award under Arkansas law.  See McGraw v. Jones, 238 S.W.3d 15, 21 (Ark. 2006) ("Evidence of future pain and suffering and permanent disability must be established with reasonable certainty and must not be left up to speculation or conjecture.").  I am convinced $528,000 is unsupported on this record and overcompensates Gonzalez for any future pain, suffering or mental anguish he might experience as the result of post-traumatic arthritis of his ankle.  See generally Thompson v. Amerada Hess Corp., No. 96-3265, 1998 WL 274260, at *7-8 (E.D. La. May 26, 1998) (remitting a jury award of $600,000 in non-economic damages to $300,000 for a plaintiff who suffered pain and suffering caused by a fractured tibia shaft and a fractured knee joint with subsequent surgery and complications related to the injuries, after not finding any "similar injuries where the general damages even come close to $600,000").

For these reasons, I would not affirm the $813,000 award, which I believe is a "shocking" windfall to Gonzalez and results in a "plain injustice" to the United States taxpayers.  I would vacate Gonzalez's damage award and remand the case to the district court to enter a new judgment.  See Hysell, 534 F.2d at 787-88.

_____