

Cite as 2017 Ark. App. 203

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV-16-590

| | |
|---|---|
| NISSAN NORTH AMERICA, INC. APPELLANT | **OPINION DELIVERED:** APRIL 5, 2017 |
| | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47CV-15-139] |
| V. | |
| JEANNE LUCILLE HARLAN APPELLEE | HONORABLE RANDY F. PHILHOURS, JUDGE |
| | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Nissan North America, Inc. ("Nissan"), appeals the Mississippi County Circuit Court's order denying Nissan's motion to set aside the default judgment filed against it on October 30, 2015. On appeal, Nissan argues that the circuit court erred in denying its motion for three reasons: (1) Nissan's failure to file a timely answer was inadvertent and the result of a mistake or excusable neglect; (2) Nissan has a meritorious defense; and (3) appellee Jeanne Harlan would suffer no prejudice if the default judgment were set aside. Nissan also contends that the circuit court erred in assigning damages for two reasons: (1) portions of the damages awarded are arbitrary and unsupported by evidence and (2) the award of attorney's fees is improper under Arkansas law. We affirm.

I. *Facts*

Harlan filed suit against Nissan alleging that, while she was driving, she was injured when her car, a 2000 Infiniti G20, violently and explosively deployed the front driver and passenger airbags without any collision or other apparent reason. No other vehicle was involved in the incident. Harlan notified Nissan and cooperated in its investigation. She took her car to the Nissan dealership in Blytheville, Arkansas, on July 20, 2012, for an inspection arranged by Nissan.

Harlan further alleged that on September 10, 2012, Nissan's representative, Joey Ruff, contacted Harlan's attorney by telephone and later confirmed by email that Nissan was responsible for the deployment of the airbag and that Nissan would pay for repairs. Ruff requested that Harlan make an appointment with the Nissan dealership at her convenience. However, on September 12, 2012, Ruff wrote Harlan's attorney that the dealership was not capable of performing the needed repairs, and Harlan's car "is being towed (at no cost to the customer) to Infiniti of Memphis. Once the repairs are completed, the vehicle will be towed back" to the dealership. Harlan alleged that she did not consent to her car being taken to Memphis. Nissan later notified Harlan that a replacement airbag was not available and the vehicle was not safe to drive without one.

Harlan claimed that Rob Bickens, another Nissan representative, offered to pay her $5950 for her car, along with attorney's fees in the amount of $1500. On December 14, 2012, Bickens increased his offer by $550 to resolve all claims for $8000. Instead of accepting the offer by Nissan, Harlan filed suit.

The complaint alleged as follows:

15. The Defendant, Nissan North America, Inc., was guilty of fault which was a proximate cause of the unexpected air bag deployment and Plaintiff's resulting damages, which acts of fault include, but are not limited to, the following:
a) Strict liability in tort based on supplying a product in a defective condition which rendered it unreasonably dangerous (*see* A.C.A. § 16-116-102);
b) Breach of the implied warranty of merchantability;
c) Breach of the implied warranty of fitness for a particular purpose; and,
d) Breach of express warranty.

16. Pleading further, Plaintiff states that the Defendant, Nissan North America, Inc., is also at fault and liable to Plaintiff under the theories of breach of contract, promissory estoppel, conversion, and bailment, inasmuch as it represented to the Plaintiff that it would repair the vehicle and return it to her in Blytheville, Arkansas. Instead, Nissan North America, Inc., failed to repair the vehicle; moved the vehicle to Memphis without Plaintiff's consent; and, has kept the vehicle and converted that vehicle to its own use without compensating Plaintiff for the vehicle or the loss of use of the vehicle for almost three (3) years.

She alleged that she was entitled to damages of $5950 for the value of her car; a reasonable amount for the loss of use of her vehicle; her time and expense incurred in traveling to Memphis—a 160-mile-round trip—to remove items from her car because she had not been told it would be taken there; registration fees, license-tag fees, and sales tax incurred by obtaining another car; and "such other damages as the jury may find to be fair and reasonable under the circumstances." Finally, she sought pre- and postjudgment interest, costs, and attorney's fees.

Harlan obtained service on Nissan through its registered agent for service of process in Arkansas on August 27, 2015. No answer was filed, and Nissan later alleged that its administrative specialist had inadvertently failed to route the summons to the appropriate individuals in the company. Accordingly, Nissan's legal staff did not receive a copy of the summons, and no answer was filed to Harlan's complaint.

At the hearing on Harlan's oral motion for default judgment, Harlan testified as to the facts set forth above regarding the airbag deployment and her dealings with Nissan. Photographs of Harlan's arms, depicting burn-like injuries, were introduced into evidence. She also testified that her daughter, a passenger in the car at the time of the airbag deployment, cried because, although she did not sustain any injuries, the deployment caused "such a loud bang."

She testified that she and Nissan had agreed that the value of the car, as set forth in the National Automobile Dealers Association Used Car Guide, was $5950, and the document depicting this information was admitted into evidence. She also said that Nissan was going to charge her for storing her car at the Infiniti dealership in Memphis, where Nissan had taken it. She said that she arranged to have it towed for $443.30, and the bill was admitted into evidence. She also said that the car was currently being stored, but she had not yet received a bill for its storage.

She asked the circuit court for compensatory damages and for an amount that would "fairly compensate [her] for the temporary visible results of the injury, the pain, and mental anguish." She testified, "As a result of this, I became fearful for a little bit about even riding in a vehicle or airbags [sic]. I got over it because I had to take my grandson to daycare."

Harlan's counsel, referring to Harlan's request for compensation for her injuries, pain, and suffering, told the circuit court that "we would just certainly leave that to the court's discretion." Harlan then specifically testified that she was seeking $5950 for the value of the vehicle; $900 per month from July 1 until December 14, 2015, representing $30 a day for the loss of use of the vehicle; one dollar per mile for the 160-mile round trip to Memphis;

$512 for registration, title, and sales tax for acquiring an identical vehicle for $5950; $443 for the towing charge; and for reasonable attorney's fees. Counsel told the circuit court that, looking strictly at time, "I probably have twenty hours." The circuit court then awarded $5000 for attorney's fees in its judgment filed October 30, 2015, along with the other amounts sought for damages as set forth in Harlan's request.

When the circuit court asked counsel whether he had an amount in mind for compensatory damages for Harlan's pain, suffering, and mental anguish, counsel responded that "for the fright and the anguish, I think $5000 would be a reasonable amount for that." The circuit court complied, and the judgment also reflects this amount. Harlan's counsel notified Nissan by letter dated December 16, 2015, that a judgment had been obtained in the amount of $23,198.44.

On January 21, 2016, Nissan filed a motion to set aside the default judgment and alleged that it had been notified of the incident by Harlan and that Nissan had performed an investigation. Nissan alleged that "the vehicle also displayed some underbody impacts, suggesting the undercarriage came into contact with another object at some point." Nissan also claimed that, despite this, it had offered Harlan $8000 ($6000 for the vehicle and $2000 for additional expenses). This offer was declined, and Harlan filed her complaint on June 29, 2015. Although service was obtained on August 27, 2015, Nissan claimed that its administrative specialist "inadvertently failed to route the summons to the appropriate individuals in the company. As a result of this accident, Nissan's legal staff did not receive a copy of the summons and an assignment was never created in Nissan's system." Further, Nissan asserted that the matter had been submitted for a default judgment "without giving

anyone at Nissan notice." Nissan admitted that its in-house counsel learned of the complaint

and judgment when it received the letter from Harlan's counsel on December 17, 2015.

Nissan urged the circuit court to set aside the default judgment under Arkansas Rule of

Civil Procedure 55(c) (2015) on the grounds of inadvertence, mistake, excusable neglect,

and other reasons justifying relief from the operation of judgment.

Harlan responded that Nissan had failed to attend to business, which is not the type

of mistake, inadvertence, surprise, or excusable neglect contemplated under Rule 55(c) that

would excuse the failure to answer or serve as grounds to set aside a default judgment. The

circuit court denied Nissan's motion by order filed March 7, 2016. This appeal timely

followed.

## II.  *Applicable Law*

The Arkansas Supreme Court has clearly established the applicable standard of

review:

> The standard by which we review the granting of a default judgment and the
> denial of a motion to set aside the default judgment is whether the trial court abused
> its discretion. *NCS Healthcare, Ark., Inc. v. W.P. Malone, Inc.*, 350 Ark. 520, 88
> S.W.3d 852 (2002); *Southeast Foods, Inc. v. Keener*, 335 Ark. 209, 979 S.W.2d 885
> (1998); *Arnold & Arnold v. Williams*, 315 Ark. 632, 870 S.W.2d 365 (1994). Default
> judgments are not favorites of the law and should be avoided when possible. *B & F
> Engineering, Inc. v. Cotroneo*, 309 Ark. 175, 830 S.W.2d 835 (1992). In fact, the
> purpose for the 1990 amendment to Ark. R. Civ. P. 55 was to liberalize Arkansas
> practice regarding default judgments, and the revised rule reflects a preference for
> deciding cases on the merits rather than on technicalities. *Id.*; *See* Addition to
> Reporter's Notes to Rule 55, 1990 Amendment. Arkansas R. Civ. P. 55(c) provides
> that a court may set aside a default judgment previously entered if it finds that the
> default was due to mistake, inadvertence, surprise, or excusable neglect.

*Volunteer Transp., Inc. v. House*, 357 Ark. 95, 99–100, 162 S.W.3d 456, 458 (2004). This

court expanded on the supreme court's standard by stating,

6

An order denying a motion to set aside a default judgment is an appealable order, *see Marcinkowski v. Affirmative Risk Mgmt. Corp.*, 322 Ark. 580, 910 S.W.2d 679 (1995), which this court reviews for an abuse of discretion. *Nationwide Ins. Enter. v. Ibanez*, 368 Ark. 432, 246 S.W.3d 883 (2007). The abuse-of-discretion standard is "a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Gulley v. State*, 2012 Ark. 368, at 10, 423 S.W.3d 569, 576.

*Lone v. Koch*, 2015 Ark. App. 373, at 4, 467 S.W.3d 152, 155.

Finally, Arkansas Rule of Civil Procedure 55(c) provides,

Setting Aside Default Judgments. The court may, upon motion, set aside a default judgment previously entered for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) the judgment is void; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; or (4) any other reason justifying relief from the operation of the judgment. The party seeking to have the judgment set aside must demonstrate a meritorious defense to the action; however, if the judgment is void, no other defense to the action need be shown.

### III. *Denial of Motion to Set Aside the Default Judgment*

Nissan first contends that the circuit court erred in denying its motion to set aside the default judgment because its failure to file a timely answer was inadvertent and the result of mistake or excusable neglect. Nissan contends that, as indicated in the Reporter's Note following Rule 55's 1990 amendment, Rule 55 was substantially amended to liberalize Arkansas practice regarding default judgments, reflecting a clear preference for deciding cases on the merits. Nissan urges this court to look to federal cases in considering whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused. *See Hoover v. Valley W. DM*, 823 F.2d 227 (8th Cir. 1987).

Nissan argues that several federal cases support setting aside a default judgment when excusable neglect occurs. *See Union Pac. R.R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d

781 (8th Cir. 2001) (defendant's faulty record-keeping, which was responsible for causing its default, constituted "excusable neglect," warranting relief from a default judgment); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781 (8th Cir. 1998) (default judgment set aside where there was a good faith, relatively brief default in the filing of an initial pleading, caused by poor communication between Dayton Electric and its insurer, and cured within one day once Dayton Electric learned of its mistake).

Nissan argues that its omission was an isolated incident. Nissan maintains that its normal practice would have been to forward the notice to its legal department and that, through inadvertency by an administrative specialist, a nonlawyer, summons was not entered or assigned in accordance with Nissan's processes and procedures. Nissan contends that it handles a high volume of cases on a daily basis and that its legal counsel had "no way of knowing the lawsuit even existed."

Nissan contends that its case is analogous to *Union Pacific Railroad*, *supra*, where an error by a nonlawyer caused the legal department to have no knowledge of the lawsuit. Otherwise, Nissan asserts that it would have ensured retention of local counsel to timely file a responsive pleading. Nissan contends that when it learned of the default, it promptly moved to seek relief. Nissan finally contends that this is the very definition of inadvertence, mistake, and excusable neglect, and justice requires that the default be set aside.

We hold that the circuit court committed no abuse of discretion in denying Nissan's motion to set aside the default judgment because Nissan failed to establish a legally acceptable reason or excuse for not answering Harlan's complaint. Once a default judgment has been entered, Rule 55(c) requires a two-step analysis before a defaulting defendant can succeed

in having a default judgment set aside. Nissan did not make a threshold showing by proving that one of the four enumerated categories of legally acceptable reasons or excuses existed to justify setting aside the default judgment. *Truhe v. Grimes*, 318 Ark. 117, 884 S.W.2d 255 (1994); *Maple Leaf Canvas, Inc. v. Rogers*, 311 Ark. 171, 842 S.W.2d 22 (1992); *Tyrone v. Dennis*, 73 Ark. App. 209, 39 S.W.3d 800 (2001). Failure to properly attend to business and answer a lawsuit does not constitute a legally acceptable reason or excuse for setting aside a default judgment under Rule 55(c). *McGraw v. Jones*, 367 Ark. 138, 238 S.W.3d 15 (2006); *Nucor Corp. v. Kilman*, 358 Ark. 107, 186 S.W.3d 720 (2004); *Tharp v. Smith*, 326 Ark. 260, 930 S.W.2d 350 (1996); *Truhe, supra*; *Arnold & Arnold, supra*; *B&F Eng'g, supra*; *Israel v. Oskey*, 92 Ark. App. 192, 212 S.W.3d 45 (2005).

Because the threshold was not met, this court does not reach the second step of the analysis—whether Nissan had a meritorious defense or whether Harlan would have been prejudiced had the motion been granted. *See McGraw, supra.* Therefore, we decline to address Nissan's argument regarding those issues, and we affirm the circuit court's denial of Nissan's motion to set aside the default judgment, because the circuit court did not act improvidently, thoughtlessly, or without due consideration.

## IV. *Damages*

Nissan argues that the circuit court erred in denying its motion to set aside the default judgment because significant portions of the damages awarded are arbitrary and unsupported by evidence. After a default judgment has been entered, the party seeking damages is required to present sufficient evidence to justify the damages based on physical and mental

pain.  *Volunteer Transp.*, *supra*.  Nissan contends that self-serving testimony on the nature

and extent of pain and mental anguish is insufficient to support a finding of damages.

Our supreme court reversed a $500,000 damages award, where the figure was over

ten times the amount of the appellee's actual out-of-pocket medical bills and lost wages:

> Presumably, the court awarded over $450,000 for past and future pain,
> suffering, and mental anguish. Evidence of future pain and suffering and permanent
> disability must be established with reasonable certainty and must not be left up to
> speculation or conjecture. *Volunteer Transp., Inc. v. House*, 357 Ark. at 103, 162
> S.W.3d at 461. In *Volunteer Transport*, our court reversed an award of damages where
> the only evidence offered to prove the nature, extent, and permanency of appellee's
> injury was his own self-serving hearsay testimony. *Id*. at 103, 162 S.W.3d at 460.
> Similarly, in the instant case, Appellees did not offer any evidence other than their
> own self-serving testimony to prove the nature, extent, and permanency of their
> injuries. The court in *Volunteer Transport* also noted, "Furthermore, the record is
> silent as to how the trial court arrived at the damage amounts." *Id*. at 104, 162 S.W.3d
> at 461. Similarly, in the instant case, it appears the circuit court arrived at the
> $500,000 figure merely at the suggestion of counsel for Appellees.

*McGraw*, 367 Ark. at 146–47, 238 S.W.3d at 21–22.

Nissan contends that Harlan offered only self-serving testimony regarding the worth

of the vehicle, the value of her travel to Memphis and back, and the registration, license-

tag, and sales-tax fees.  Further, Nissan argues that Harlan failed to present any verifiable

evidence of her alleged physical and mental pain.  Nissan claims that Harlan "merely showed

the judge pictures of her injuries, corroborated only by her self-serving testimony.  She

acknowledged that her bruises and any residual pain took 'a week or two to heal.'"  Based

on her lawyer's estimation that $5000 would be a reasonable amount, Nissan complains that

the circuit court valued the damages for physical injuries without any analysis.

Nissan also complains of the award of loss of use of the vehicle at $30 per day.  It

cites *Fryar v. Sanders*, 301 Ark. 379, 784 S.W.2d 168 (1990), stating that loss-of-use awards

are permissible, but sufficient evidence is required for the trier of fact to make a finding on the reasonableness of such awards. Nissan argues that, unlike in *Fryar*, Harlan did not present any evidence of a reasonable timeframe on which to base the award for loss of use. Nissan contends that Harlan impermissibly requested a full five months' worth of rental expenses based on Nissan's final settlement offer, not on the time it took to repair or replace the vehicle. Further, Nissan argues that there is no indication that Harlan rented a substitute vehicle or replaced the lost one or that $30 per day was the value of a reasonable replacement vehicle.

Harlan contends that the damages awarded are supported by the evidence and are not arbitrary. We note that our supreme court set forth our standard of review in cases involving damages as follows:

> In civil cases where the trial judge, rather than a jury, sits as the trier of fact, the correct standard of review on appeal is not whether there is any substantial evidence to support the finding of the court, but whether the judge's findings are clearly erroneous or clearly against the preponderance of the evidence. *Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997).

*McGraw*, 367 Ark. at 146, 238 S.W.3d at 21.

In distinguishing her case from *McGraw*, Harlan submits that there is a huge difference between a $500,000 personal-injury award and the modest $5000 personal-injury award in this case, which was supported by photographic evidence. Harlan testified that she had been hurt, frightened, and worried but admitted that she had no permanent impairment or permanent visible results from the injuries depicted in the photos. Further, she contends that, even though her attorney suggested $5000 as the award, that fact does not warrant

setting aside the default judgment or the damages amount. We agree with Harlan's distinction between *McGraw* and the instant matter.

The circuit court's award for the value of the vehicle is supported by Harlan's testimony and the documentary evidence of the car's retail value as set forth in an exhibit that was admitted into evidence. Further, Nissan admitted on page 1 of its motion to set aside the default judgment that it had offered $6000 for the vehicle plus $2000 for expenses before the suit was filed. Further, evidence concerning Harlan's physical injuries consisted of her own testimony and photographs of visible marks, scrapes, burns, and bruises. Harlan contends that the circuit court was allowed to use common sense to arrive at the personal-injury award as do juries in courtrooms every day. *See* AMI Civ. 104, 2202, 2205, and 2208. Finally, the registration fees, license-tag fees, and sales-tax figures were obtained by Harlan from the Arkansas Department of Finance and Administration for a replacement vehicle, based on a $5950 purchase price, and this information was conveyed to the circuit court when Harlan testified. Accordingly, the circuit court's findings on damages are not clearly against the preponderance of the evidence.

## V. *Attorney's Fees*

We have stated that attorney's fees are not allowed except when expressly provided for by statute. *Harris v. City of Fort Smith*, 366 Ark. 277, 280, 234 S.W.3d 875, 878 (2006) (citing *Chrisco v. Sun Indus.*, 304 Ark. 227, 800 S.W.2d 717 (1990)). An award of attorney's fees will not be set aside absent an abuse of discretion by the circuit court. *Chrisco*, 304 Ark. at 230, 800 S.W.2d at 719. While the decision to award attorney's fees and the amount awarded are reviewed under an abuse-of-discretion standard, we review factual findings by

a circuit court on the existence of the *Chrisco* factors under a clearly-erroneous standard of review. *Davis v. Williamson*, 359 Ark. 33, 194 S.W.3d 197 (2004).

Nissan argues that the award of attorney's fees is improper under Arkansas law because attorney's fees may not be awarded for an action in tort. *See* Ark. Code Ann. § 16-22-308 (Repl. 1999). If both contract and tort claims are advanced, an award of attorney's fees to the prevailing party is proper only when the action is based primarily in contract. *Meyer v. Riverdale Harbor Mun. Prop. Owners Imp. Dist. No. 1*, 58 Ark. App. 91, 947 S.W.2d 20 (1997). Nissan argues that Harlan's case is founded primarily in tort, not contract, because both her complaint and the judgment show the strict-liability and breach-of-warranty claims blocked out in bullet points, with the contractual claim mentioned in the paragraph below, which Nissan characterizes as an afterthought. Further, Nissan argues that Harlan has no contract with Nissan because she bought a used car. Therefore, Nissan contends that the circuit court abused its discretion in awarding attorney's fees.

Harlan argues that the circuit court did not err in awarding attorney's fees in this case because the fees are specifically allowed under Arkansas Code Annotated section 16-22-308, which provides,

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or *contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract*, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

(Emphasis added). Harlan contends that the fees awarded were appropriate under the statute because her breach-of-warranty and strict-product-liability claims involved a civil action to recover on a contract relating to the purchase or sale of goods, wares, or merchandise or

breach of contract. She cites *Curry v. Thornsberry*, 81 Ark. App. 112, 98 S.W.3d 477 (2003), where this court held that the homeowner's claim for defective construction was an action "in contract" that concerned the implied warranty of habitability, and it awarded the builder attorney's fees.

Harlan contends that Arkansas Code Annotated section 4-86-101 (Repl. 2011) allows her claim under breach of contract or warranty.[1] Harlan also argues that her proof on the issue of strict liability and breach of the implied warranty of merchantability is the same. She claims that the fact that the airbag exploded in her face is evidence that it was both defective and out of compliance with the implied warranty of merchantability that goes with any product placed into the stream of commerce.

Relying on her complaint, which alleged breach of express warranty in paragraph 15 and breach of contract in paragraph 16, the evidence as set forth by Harlan at the hearing on damages, and contention that he had worked twenty hours on the case, we hold that the circuit court did not abuse its discretion in awarding $5000 in attorney's fees.

Affirmed.

HARRISON and MURPHY, JJ., agree.

*Hartline Dacus Barger Dreyer LLP*, by: *Jeffrey Patterson*; and *Wright, Lindsey & Jennings, LLP*, by: *Michael A. Thompson* and *Baxter D. Drennon*, for appellant.

*Reid, Burge, Prevallet & Coleman*, by: *Robert L. Coleman*, for appellee.

---

[1]Ark. Code Ann. § 4-86-101 provides that the lack of privity between plaintiff and defendant shall be no defense in an action against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods.