Cite as 2025 Ark. App. 592

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-24-359

| | |
|---|---|
| BRADBURY CAPITAL, LLC<br><br>APPELLANT<br><br>V.<br><br>LOFTY LABS LLC<br><br>APPELLEE | Opinion Delivered December 10, 2025<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CV-23-3312]<br><br>HONORABLE JOHN C. THREET, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND VACATED IN PART |

**BART F. VIRDEN, Judge**

Appellant Bradbury Capital, LLC, appeals from the Washington County Circuit Court's order denying its motion to set aside a default judgment granted to appellee Lofty Labs LLC. Bradbury argues that the trial court erred by (1) failing to set aside the default judgment for insufficient service; (2) failing to set aside the default judgment pursuant to Ark. R. Civ. P. 55(c)(1), (3), or (4); (3) entering a permanent injunction; and (4) awarding damages without holding a hearing. We affirm in part and reverse and vacate in part.

### I. *Background*

Bradbury is a private investment firm with investments in the agriculture and oil-and-gas industries. Lofty is a strategic software development firm operating in the same industries. On August 4, 2021, the parties entered into a "Master Services Agreement" (MSA). In

August 2023, the owners of Bradbury and Lofty began discussing winding down one of the two projects that Lofty had been working on that Bradbury did not think was profitable, and there was mention that Bradbury had already spent $1.5 million on the other project. Soon, a dispute ensued over Lofty's supposed lack of progress and Bradbury's alleged failure to make timely payments, resulting in an outstanding balance of $440,000. Counsel for both parties then got involved, and the email exchanges got contentious, with both sides threatening litigation.

On August 29, 2023, Bradbury's counsel sent a "demand" letter to Lofty for "purported work related to the MSA," including copies of invoices and timesheets and access to a drive containing documentation on the software developed for Bradbury. Bradbury's counsel wrote that if he did not hear from Lofty by 5:00 p.m. on September 5, he would assume that Lofty was refusing the demand and that Bradbury would pursue all legal rights and remedies available. Lofty's counsel responded the following day to say that Lofty was not refusing Bradbury's request for documents but that Lofty could not get them by the deadline. Same counsel for Lofty responded on September 8 that Bradbury already had most of the information being sought and that Lofty was "prepared to seek all legal recourse" for Bradbury's breach of the MSA and to collect the $440,000 Bradbury still owes Lofty. On September 10, Bradbury's counsel said that he "looked forward to" the discovery process, warned that any attempt to collect on fees would be met with a countersuit, and informed counsel that Bradbury was engaging local counsel that week and "will be at the ready to respond." On September 12, Bradbury's counsel said that Bradbury would not be paying any

more invoices from Lofty and that "we are more than happy to waive arbitration and proceed directly to court." Bradbury's counsel replied, "Our local counsel will be at the ready with our countersuit as soon as we are served with your pleadings and begin the discovery process." Bradbury's counsel added, "I am happy to accept service via email at this address." Later that same day, Lofty's counsel wrote that the parties' dispute appeared to be "head[ing] toward litigation," and in conclusion, Lofty's counsel wrote that "we will file suit if Lofty does not receive payment from Bradbury this week. I will provide a courtesy copy to you via email."

On October 25, 2023, Lofty filed a complaint against Bradbury alleging causes of action for breach of contract, breach of implied contract, and unjust enrichment. Lofty sought damages as well as injunctive relief for Bradbury's alleged violation of the parties' nonsolicitation provision in the MSA. On December 5, Lofty filed proof of service that had been obtained on Bradbury's registered agent in Wilmington, Delaware, on November 2. Lofty also filed a motion for default judgment seeking damages in the amount of $440,000 for breach of contract on an open account as set forth in its verified complaint. On December 6, Lofty sent a proposed order to the judge, and the trial court granted default judgment against Bradbury on December 7.

The trial court specifically found that Lofty's complaint had been properly verified and that the court accepted the verification as true and correct. The trial court thus awarded Lofty $440,000 plus prejudgment and postjudgment interest, attorney's fees, and costs. The trial court also granted the injunctive relief sought by Loft, finding that Bradbury is

prohibited from directly or indirectly soliciting, retaining, or hiring any of Lofty's current or former employees for employment or outside services. Bradbury moved to set aside the default judgment, and a hearing was held in February 2024.

At the hearing, counsel for both parties made arguments. It was learned through Bradbury's counsel that Bradbury's registered agent, CT Corporation, had "inexplicably" held the summons and complaint from Lofty until November 29 and then mailed it to an unrelated "Bradbury Capital" in Boston, Massachusetts, which had been defunct for over a decade. The trial court ruled from the bench, denying Bradbury's motion to set aside.

In its order denying the motion to set aside, the trial court found that Lofty had properly served Bradbury in that there was no dispute that Lofty served Bradbury's registered agent for service of process via certified mail, return receipt requested. The trial court found that the "CT Corporation" stamp on the return receipt was sufficient to satisfy the requirements of Ark. R. Civ. P. 4(g). The trial court further found that none of Bradbury's arguments under Ark. R. Civ. P. 55(c) were sufficient to set aside the default judgment. Bradbury brought this appeal.

II. *Discussion*

A. Default Judgment

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, judgment by default may be entered by the court. Ark. R. Civ. P. 55(a). Pursuant to Rule 55(c), the court may, upon motion, set aside a default judgment previously entered for the following reasons: (1) mistake,

4

inadvertence, surprise, or excusable neglect; (2) the judgment is void; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; or (4) any other reason justifying relief from the operation of the judgment. The party seeking to have the judgment set aside must demonstrate a meritorious defense to the action; however, if the judgment is void, no other defense to the action need be shown. Ark. R. Civ. P. 55(c).

Our standard of review from an order denying a motion to set aside a default judgment depends on the grounds upon which the appellant is claiming that the default judgment should be set aside. *Ewing v. Schmalz*, 2025 Ark. App. 495, ___ S.W.3d ___. When the appellant claims that the default judgment is void, the matter is a question of law, which we review de novo and give no deference to the trial court's ruling. *Id.* In all other cases where we review a motion to set aside a default judgment, we do not reverse absent an abuse of discretion. *Id.*

This court has recognized that default judgments are not favored by the law and should be avoided when possible. *Steward v. Kuettel*, 2014 Ark. 499, 450 S.W.3d 672. Because of its harsh and drastic nature, which can result in the deprivation of substantial rights, a default judgment should be granted only when strictly authorized and when the party affected should clearly know he is subject to default if he does not act in a required manner. *Id.*

1. *Rule 55(c)(2)*

5

Bradbury argues that it did not receive notice of Lofty's complaint and summons and that the default judgment is therefore void ab initio. Arkansas law requires valid service of process before a court can acquire jurisdiction over a defendant. *Morgan v. Big Creek Farms of Hickory Flat, Inc.*, 2016 Ark. App. 121, 488 S.W.3d 535. It is also well accepted that the service requirements must be strictly construed, and compliance with them must be exact. *Id.*

Arkansas Rule of Civil Procedure 4(g) provides alternative methods of service. Service on the registered agent of a corporation or other organization may be made by certified mail with a return receipt requested. Ark. R. Civ. P. 4(g)(1)(A)(i). The rule further provides the following:

> (ii) Service pursuant to this paragraph (A) shall not be the basis for the entry of a judgment by default unless the record contains a return receipt signed by the addressee or the agent of the addressee or a returned envelope, postal document; A United States Postal Service Form 3811 (Domestic Return Receipt-green card) executed as provided in the United States Postal Service procedures in place at the time of service; or an affidavit by a postal employee reciting or showing refusal of the mailed process by the addressee. Failure to claim mail does not constitute refusal for purposes of this paragraph.
>
> . . . .
>
> (iv) A judgment by default may be set aside pursuant to Rule 55(c) if the addressee demonstrates to the court that the return receipt was signed or delivery was refused by someone other than the addressee or the agent of the addressee.

Ark. R. Civ. P. 4(g)(1)(A)(ii), (iv).

Appellate courts review a trial court's factual findings regarding service of process under a clearly-erroneous standard of review, but when the issue presented involves the

6

correct interpretation of an Arkansas court rule, the issue is a question of law reviewed de novo. *Wright v. Wright*, 2023 Ark. App. 512, 678 S.W.3d 640.

Bradbury asserts that *Southeastern Commercial Masonry, Inc. v. CR Crawford Construction, LLC*, 2024 Ark. App. 312, controls the result in this case. That case involved out-of-state service and a commercial delivery company, which implicated Rule 4(g)(2)(B) instead of Rule 4(g)(1)(A)(ii). Rule 4(g)(2)(B) provides that the process must be delivered to the defendant or an agent authorized to receive service of process on behalf of the defendant and that the signature of the defendant or agent must be obtained. We held that the trial court erred in refusing to set aside the default judgment in that case because there was no signature by the defendant or the defendant's agent. In *Southeastern*, there was a FedEx receipt with the notation that it had been signed for by "G.Posey" and an affidavit from Jeffery Posey, Southeastern's registered agent, who attested, "G.Posey is an employee of Southeastern Commercial Masonry, Inc., however he is not an officer of the Company and has no authority to accept service of process on behalf of the Company." Here, unlike "G.Posey" in *Southeastern*, CT Corporation is Bradbury's registered agent and was authorized to accept service of process on Bradbury's behalf.

Bradbury argues that the proof of service here, however, did not contain a legally sufficient signature; rather, the green card contains only a generic CT Corporation stamp. Bradbury points to Rule 4(g)(1)(A)(ii)'s language that the return receipt must be signed by the addressee or the agent of the addressee. Bradbury asserts that, although the stamp is an acknowledgement of delivery, it is not a signature.

7

In *Ladd v. PS Little Rock, Inc.*, 2016 Ark. App. 506, the trial court dismissed Ladd's complaint after finding that service was defective for various reasons. We reversed that decision. One of the reasons for its dismissal decision was because no signature or name as to who had received the documents appeared on a return receipt. We said that this finding was belied by the fact that the return receipt was signed, "CT Corp." In *Ladd*, we discussed a 2004 amendment to Rule 4(d)(8)(i) that permitted service on the registered agent of a corporation to be made by certified mail with a return receipt requested in order to establish less onerous requirements when service is made on the registered agent of a corporation or other organization. We said that the amended rule makes it clear that restricted delivery is not required; thus, there is no requirement that the addressee be a natural person or that the addressee's agent be authorized in accordance with postal-service regulations. In reversing the trial court's dismissal and holding that service of process was valid, we said that the rule permits service by certified mail with return receipt requested, which is what occurred in that case and that the signatory had signed "CT Corp" in the signature block of the return receipt. We noted that PS Little Rock did not contend that this was an unauthorized signature. Here, Bradbury has not argued that CT Corporation's stamp on this return receipt for certified mail was unauthorized—only that it is not a signature.

Lofty served Bradbury's registered agent with service of process via certified mail with return receipt requested, as evidenced by the affidavit of service filed, which complies with Ark. R. Civ. P. 4(g)(1)(A)(i). Arkansas has not decided whether a stamp, as opposed to a signature, satisfies the rule; however, nothing in the rule expressly prohibits the use of a

stamp when it is clearly intended as a signature. We note that Bradbury designated a very well-known corporation as its registered agent and not a natural person who could provide a handwritten signature on return receipts. The return receipt here stamped by "CT Corporation" appears valid on its face. The return of service is prima facie evidence of service, and the party claiming that service was not had has the burden of proof to overcome the prima facie case created by the proof or return of service. *Robin Dee Enters., Inc. v. Burns*, 2024 Ark. App. 59, 684 S.W.3d 596. Bradbury has not overcome the prima facie case created by the return of service.

## 2. *Rule 55(c)(1), (3) & (4)*

First, pursuant to Ark. R. Civ. P. 55(c)(1), Bradbury argues that the trial court abused its discretion in not setting aside the default judgment due to mistake, inadvertence, surprise, or excusable neglect. Bradbury argues that it was obviously surprised to receive the default judgment given that Bradbury had no notice of it or of Lofty's lawsuit. Bradbury asserts that it acted diligently in moving to set aside the default judgment. Bradbury points out that default judgments are punitive and seek to punish only those who clearly know that they are subject to default, and here, Bradbury did not know.

Bradbury cites several cases in which the appellate courts have affirmed a trial court's decision refusing to set aside default judgments but notes that most of them involve facts in which the movant received actual notice of the complaint, knew of the obligation to respond, and simply failed or relied on someone else to take care of business. *See Truhe v. Grimes*, 318 Ark. 117, 884 S.W.2d 255 (1994); *B & F Eng'g, Inc. v. Cotroneo*, 309 Ark. 175, 830 S.W.2d

9

835 (1992); *Israel v. Oskey*, 92 Ark. App. 192, 212 S.W.3d 45 (2005). While Bradbury did not know that a complaint had been filed or that a default judgment had been entered, the email exchanges between counsel make clear that both parties were threatening and preparing for litigation—Bradbury went so far as to hire local counsel who sat "at the ready" with a countersuit. The trial court may have concluded that Bradbury should not have been surprised that a complaint had been filed and that Bradbury could have discovered the filing without the need for a courtesy copy of the lawsuit by opposing counsel. The abuse-of-discretion standard is "a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration." *Nissan N. Am., Inc. v. Harlan*, 2017 Ark. App. 203, 518 S.W.3d 89. We cannot say that the trial court abused its discretion in refusing to set aside the default judgment on this ground.

Second, under Ark. R. Civ. P. 55(c)(3), Bradbury argues that Lofty's counsel engaged in misconduct in two respects. Bradbury argues that Lofty's counsel requested from the trial court "a morbidly over-expansive injunction" knowing that it had no basis in law or fact to do so. Bradbury argues that the parties' MSA prohibited it from soliciting Lofty's current employees for only a one-year period after termination of the MSA. Also, Bradbury says that injunctive relief was available only if it breached that provision. Bradbury asserts that, while it may have spoken with former Lofty employees, it never solicited them. While we agree that the injunctive relief granted was overly broad, we are not prepared to call counsel's request "misconduct" to warrant the setting aside of the default judgment.

Bradbury argues that Lofty's counsel also committed misconduct in dealing with Bradbury's counsel. According to Bradbury, Lofty's counsel gamed the default-judgment rules to avoid litigation on the merits by failing to serve a courtesy copy of Lofty's complaint on Bradbury's counsel despite his agreement to do so. Bradbury contends that its counsel was lulled into a feeling of security that partially contributed to the default, even if merely by accident. Bradbury asserts that its counsel informed Lofty's counsel via email that he would accept service of any process via email and that Lofty's counsel promised to provide a courtesy copy of the lawsuit via email but then failed to do so. Bradbury argues that, instead, Lofty served its registered agent in Delaware and then waited more than a month before filing proof of service, i.e., the day after Bradbury's deadline to respond, and mere hours before filing a motion for default judgment. Bradbury argues that Lofty's counsel was communicating all the while—not mentioning the lawsuit—and clearly stalling for time. Bradbury says that, after default judgment was entered, Lofty's counsel sent the default judgment to Bradbury's counsel via email.

In *Nucor Corp. v. Kilman*, 358 Ark. 107, 186 S.W.3d 720 (2004), one attorney claimed to have asked another attorney for a courtesy copy of any lawsuit filed. Nucor later contended that a default judgment should be set aside because the appellees' counsel failed to send that courtesy copy of the lawsuit to its attorney. The supreme court said that the cause of the default was not the appellees' counsel's failure to send a courtesy copy of the complaint to Nucor's attorney, but instead, the cause was the failure of Nucor's controller to forward the summons and complaint to Nucor's attorney.

11

Likewise, here, the default judgment resulted not from Lofty's counsel's failure to provide a courtesy copy of the complaint to Bradbury's counsel but from Bradbury's registered agent's failure to timely forward that complaint to the correct address. Serving a company's registered agent should have gotten notice to Bradbury. Lofty could not have known that CT Corporation would bungle the job. We cannot say that the trial court abused its discretion by not setting aside the default judgment for alleged misconduct by Lofty's counsel in not providing to Bradbury's counsel a courtesy copy of Lofty's complaint.

Third, pursuant to Ark. R. Civ. P. 55(c)(4), which provides for setting aside a default judgment when there is any other reason justifying relief from the operation of the judgment, Bradbury argues that the trial court abused its discretion because it essentially ruled that allegedly valid service on a registered agent creates "an impugnable default judgment—end of story." Bradbury argues that the trial court failed to even consider Lofty's misconduct, Bradbury's extreme diligence, and the grave prejudice Bradbury will suffer. According to Bradbury, the trial court's ruling "eviscerates" the purpose of Rule 55(c), which provides that *even if there is valid service*, if the movant provides a just reason for its failure to respond to the complaint, the court should excuse it.

There is no indication that the trial court failed to consider the totality of the circumstances, including Bradbury's lack of actual notice, Bradbury's diligence, and the prejudice Bradbury will suffer. There is also no indication that the trial court mechanically applied the default-judgment rules. We hold that the trial court did not abuse its discretion in not setting aside the default judgment under Rule 55(c)'s catchall provision.

In Arkansas, the process for setting aside a default judgment requires two things: (1) a defaulting defendant must show one of the four enumerated categories in Rule 55(c) that justify setting the judgment aside; and (2) a defaulting defendant must demonstrate a meritorious defense to the action. *Tharp v. Smith*, 326 Ark. 260, 930 S.W.2d 350 (1996). Because we hold that the trial court did not abuse its discretion for any of the reasons above, we need not consider whether Bradbury demonstrated a meritorious defense to the action.

B. Injunctive Relief

Bradbury argues, alternatively, that even if we uphold the default judgment, we must vacate the permanent injunction because it far exceeded the scope of the MSA's restrictive covenant. The MSA provides the following:

> For the duration of the term of this Agreement, and for one (1) years thereafter, neither Customer nor any Customer Indemnitee shall, directly or indirectly, solicit, hire or retain for employment or outside services any of Developer's personnel, including employees, contractors, members, and managers of Developer, or actually employ any such person, or induce or attempt to induce such person to terminate his or her relationship with Developer.

In the default judgment, the trial court, referencing the MSA, prohibited Bradbury from directly or indirectly soliciting, retaining, or hiring any of Lofty's current or former employees for employment or outside services. Bradbury argues that the trial court erred because the MSA did not apply to former employees; the injunction that was granted is in perpetuity when the MSA provides for a one-year period; and Lofty did not show that Bradbury actually breached the MSA by soliciting an employee.

13

This court reviews matters that sound in equity, including permanent injunctions, de novo. *Apprentice Info. Sys., Inc. v. DataScout, LLC*, 2018 Ark. 146, 544 S.W.3d 39. We will reverse a decision on injunctive relief if the court abused its discretion; however, we review the factual findings that result in the issuance of the injunction under the clearly-erroneous standard. *Id.*

We agree that the injunctive relief granted by the trial court exceeds the scope of relief provided for in the parties' MSA in at least one respect. The prohibition in the MSA covered a one-year period following the termination of the parties' agreement. The MSA provides that the term of the agreement commenced as of the effective date, which was August 4, 2021, and shall continue at all times while Lofty is providing any services to Bradbury, unless sooner terminated in writing by either party. The parties' email exchanges accusing each other of breaching the MSA and indicating that services and payment under the MSA had stopped are a good indication that the MSA had been mutually terminated by these parties. At the latest, Lofty's filing of a complaint against Bradbury on October 25, 2023, signified the termination of the MSA. We conclude that the trial court abused its discretion in permanently prohibiting behavior that the contract prohibited for only a limited period of time. Accordingly, we reverse. Moreover, because that one-year period after the termination of the agreement has long since passed, we vacate the injunctive relief granted by the trial court.

C. Damages Without a Hearing

Bradbury further argues that the trial court erred in granting Lofty $440,000 in damages because a default judgment establishes only liability, not damages. *Jones v. McGraw*, 374 Ark. 483, 288 S.W.3d 623 (2008). Further, a defaulting defendant is entitled to a hearing to determine the amount of damages, and the plaintiff is required to introduce evidence of the damages. *Id.* Bradbury says that the only exception is with a suit on an account when the complaint is accompanied by a verified statement of the account pursuant to Ark. Code Ann. § 16-45-104 (Supp. 2025). Bradbury argues that, even if this were a suit on an account, Lofty did not comply with section 16-45-104. Moreover, referencing section 16-45-104(a)(2), Bradbury asserts that it denied the correctness of the verified complaint through Spencer Bradbury's affidavit. Section 16-45-104 provides the following:

(a)(1) In a suit on an account, including without limitation a credit card account or other revolving credit account, in a court of this state, the affidavit of the plaintiff that the account is just and correct, taken and certified according to law, is sufficient to establish the account.

(2) However, if the defendant denies under oath the correctness of the account, the plaintiff is held to prove by other evidence the part of the account in dispute.

(b) An affidavit of account under subsection (a) of this section shall be attached to the complaint and shall contain:

(1) The name of:

(A) The creditor to whom the account is owed;

(B) The creditor pursuing collection of the account; and

(C) The debtor obligated to pay the account;

(2)(A) A statement or disclosure of whether or not the debtor's account has been assigned or is held by the original creditor.

15

(B) If the account has been assigned, the affidavit shall state the name of the original creditor;

(3) A statement of the affiant's authority to execute the affidavit on behalf of the creditor, including the affiant's job title or relationship to the creditor;

(4) A statement that the affiant is familiar with the books and records of the creditor and the account;

(5) A statement that the information and amount stated in the affidavit is true and correct to the best of affiant's knowledge, information, and belief;

(6) The interest rate and the source of the interest rate; and

(7) The total amount due, including interest, at the time the affidavit is executed.

Lofty specifically sought $440,000 representing the outstanding balance on Bradbury's account. Lofty's complaint was verified by Joseph Casey Kinsey, CEO of Lofty Labs. Attached to the complaint were, among other things, a couple of "Statements of Work" showing that Bradbury had agreed to pay Lofty a monthly fee for its services. There was also a statement listing invoices identified by numbers with dates—the statement showed the amount that had been charged and what had been paid toward each invoice.

The only point raised by Bradbury in its opening brief is that the trial court erred in granting damages without a hearing. Also, Bradbury noted that there is an exception for a suit on an account but claimed in a conclusory fashion that it is inapplicable here. It was not until Bradbury's reply brief that Bradbury argued that, even if this were a suit on an account, Lofty did not comply with section 16-45-104 and that Bradbury denied the correctness of the verified complaint. An argument made for the first time on reply comes too late. *Orintas*

16

*v. Point Lookout Prop. Owners Ass'n Bd. of Dirs.*, 2015 Ark. App. 648, 476 S.W.3d 174. Unless the appellant opens the briefing with all of its arguments for reversal, the appellee has no opportunity to respond to those arguments in writing. *Id.* It is well established that we will not consider an argument made for the first time in a reply brief. *Id.* We do not address Bradbury's arguments that the exception for a suit on an account does not apply here.

In any event, in *Tackett v. Miller-Claborn Oil Distributing Co., Inc.*, 2024 Ark. App. 359, 690 S.W.3d 807, we held that the trial court was not required to hold a hearing on damages when it entered default judgment because a verified statement of the account sufficiently stated the amount due to support the award of damages. We further held that, even if the verified statement of account did not substantially comply with the statutory requirements for a suit on account, the trial court properly considered the statement to be correct. *See also Walden v. Metzler*, 227 Ark. 782, 301 S.W.2d 439 (1957) (holding that there was no merit to the further contention that the court below erred in entering judgment by default without requiring the plaintiff to present proof because there was filed with the complaint a verified statement of the account, which is sufficient to support the judgment). We conclude that there was no error committed by the trial court in not holding a hearing on damages under these circumstances.

Affirmed in part; reversed and vacated in part.

GLADWIN and HARRISON, JJ., agree.

*Rose Law Firm, a Professional Association*, by: *David S. Mitchell, Jr., Ryan J. Smith*, and *Tyler D. Mlakar*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Caley B. Vo* and *Dustin K. Doty*, for appellee.